**Von GHIO, Individually and As Representative of the Estate of Robert Joe Cady, Deceased,**

v.

**Jack JAMBON, James L. Lepine, Whitley Bear, Inc.**

**No. CIV. A. G–98–294.**

United States District Court, S.D. Texas, Galveston Division.

Oct. 27, 1998.

Thomas M. Stanley, Eastham Watson Dale & Forney, Houston, TX, for Plaintiffs.

Joel Nathan Terrebonne, Porteous Hainkel et al, New Orleans, LA, for Defendants.

### ORDER DENYING MOTION TO DISMISS

KENT, District Judge.

Plaintiff Von Ghio brings this action against Defendants Jack Jambon, James L. Lepine, and Whitley Bear, Inc., under the Jones Act, 46 U.S.C.App. § 688, *et seq.,* general maritime law, and Texas Wrongful Death and Survival Statutes. Now before the Court is Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue filed August 31, 1998. Defendants also assert that they were not Decedent's, Robert Joe Cady's, Jones Act employer. For the reasons stated below, the Motion to Dismiss is **DENIED** at this time.

Plaintiff's son, Robert Joe Cady, drowned on March 10, 1998 while serving onboard the F/V WHITLEY BEAR. At that time the WHITLEY BEAR was engaged in fishing off the Galveston coast. Prior to Mr. Cady's death, Defendant Jack Jambon leased the WHITLEY BEAR to Blue Dolphin Fishing, Inc. on January 17, 1998 for the purpose of fishing in the Gulf of Mexico during the 1998 Red Snapper Season. The parties to the lease later extended the expiration date to April 15, 1999. Robert Joe Cady apparently was hired by Blue Dolphin Fishing, Inc.

### I. Personal Jurisdiction

■ In federal court, personal jurisdiction over a non-resident defendant is proper if: (1) the defendant is amenable to service of process under the forum state's long-arm statute; and (2) the exercise of personal jurisdiction over the defendant is consistent with due process. *Jones v. Petty–Ray Geophysical Geosource, Inc.,* 954 F.2d 1061 (5th Cir.1992). The Texas long-arm statute authorizes service of process on a non-resident defendant if the defendant "does business" in Texas. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042. Because the phrase "doing business" has been interpreted to reach as far as Constitutionally permissible, the jurisdictional inquiry under the Texas long-arm statute collapses into a single due process inquiry. *Ruston Gas Turbines, Inc. v. Donaldson Co.,* 9 F.3d 415, 418 (5th Cir.1993); *Schlobohm v. Schapiro,* 784 S.W.2d 355, 356–57 (Tex.1990).

■ Whether the exercise of personal jurisdiction over a defendant is consistent with the Due Process Clause of the United States Constitution involves a two-pronged inquiry. First, the Court must conclude that the defendant has "minimum contacts" with Texas. *International Shoe Co. v. Washington,* 326

U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Second, the Court must also conclude that requiring a defendant to litigate in Texas does not offend "traditional notions of fair play and substantial justice." *Id.; see also Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir.1994); *Ruston*, 9 F.3d at 418.

 The "minimum contacts" aspect of due process can be satisfied by a finding of either specific jurisdiction or general jurisdiction. *Wilson*, 20 F.3d at 647. For general personal jurisdiction, the defendant's contacts with the foreign state must be both "continuous and systematic" and "substantial." *Id.* at 647, 650–51. Specific personal jurisdiction exists over a non-resident defendant if the defendant has " 'purposefully directed' his activities at the residents of the forum, and the litigation results from alleged injuries that 'arise from or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (citations omitted); *Villar v. Crowley Maritime Corp.*, 990 F.2d 1489 (5th Cir.1993). The critical inquiry for specific personal jurisdiction, therefore, is whether the defendant, by directing activities to the forum state, purposefully availed himself of the privilege of conducting activities within the forum state, thereby invoking the benefits and protections of its laws. *See, e.g., Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir.1986). The defendant's connection with the forum state must be of such a nature that the defendant should reasonably anticipate being haled into court there. *Id.; see also Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir.1993). A single contact with the forum state can be sufficient to support specific jurisdiction. *Ruston Gas Turbines*, 9 F.3d at 419; *Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 772 (5th Cir.1988).

 In the instant case, Defendants allege that the activities of the WHITLEY BEAR in the waters off Galveston do not provide the minimum contacts necessary to support this Court's assertion of specific or general personal jurisdiction over them. They argue that the contacts with Texas occurred after the WHITLEY BEAR was leased to Blue Dolphin Fishing, Inc., and thus the contacts cannot be attributed to them as owners, operators, or agents of the WHITLEY BEAR.

It is unclear from the lease, however, to what extent Defendants maintained control over the WHITLEY BEAR during the relevant time period. The extent of Defendants' control is a major factor bearing upon the fairness of attributing the WHITLEY BEAR's contacts to Defendants. The lease entered into between Jack Jambon as owner of the WHITLEY BEAR and Blue Dolphin Fishing, Inc. is skeletal at best and makes it impossible for the Court to know what was in the minds of parties. The lease provides no information other than the time period over which the lease was to extend, that the boat was leased for the purpose of fishing in the Gulf of Mexico during the 1998 Red Snapper season, and that the lease was terminable on demand at any time by either party. Other key aspects of the agreement such as method and amount of payment, allocation of risk, responsibility for maintenance and repairs, control over hiring and firing of the crew, etc., are omitted.

 On the facts before the Court, it is impossible to know whether the parties intended a demise charter (also known as a bareboat charter) or a time charter. Under a demise charter, the owners transfer nearly all incidents of ownership to the charterer ("lessee") who then becomes the owner *pro hac vice. See, e.g., Reed v. Steamship Yaka*, 373 U.S. 410, 412, 83 S.Ct. 1349, 1352, 10 L.Ed.2d 448 (1963); *Deal v. A.P. Bell Fish Co.*, 674 F.2d 438, 440 (5th Cir.1982). Creation of a demise charter requires that the owner of the vessel "completely and exclusively relinquish 'possession, command and navigation' of the vessel to the charteree . . . . anything short of such a complete transfer is a time or voyage charter party or not a charter party at all." *Guzman v. Pichirilo*, 369 U.S. 698, 699, 82 S.Ct. 1095, 1096, 8 L.Ed.2d 205 (1962). The owner is then relieved of his obligations as owner and operator of the vessel for the term of the charter; liability for the contracts and torts of the master, crew, and vessel falls upon the charterer and upon the vessel in rem. *See, e.g., Agrico Chem. Co. v. M/V Ben W. Martin*, 664 F.2d 85 (5th Cir.1981). In contrast, the owner leasing his vessel under a time or voyage charter maintains significant control over the vessel and its operations. *See id.* at 90. The

distinction between these two types of agreements has significant ramifications for allocation of liability and in the instant case for the fairness of attributing to Defendants the contacts of the WHITLEY BEAR with Texas.[1] As the Court can not make a final determination as to personal jurisdiction without additional facts, Defendants are invited to revisit this issue in forty-five days which will allow the parties an opportunity to offer specific admonitions as to the nature of the lease agreement. Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is therefore **DENIED** at this time.

## II. Venue Under the Jones Act

 Defendants also urge dismissal on the ground that venue under the Jones Act special venue provision is improper. 46 U.S.C.App. § 688 of the Jones Act provides that suits may be brought against a defendant employer in the district in which the employer resides or has its principal place of business. As one of Plaintiff's asserted bases for liability is the Jones Act, Defendants argue that they can only be sued in Louisiana where they reside and have their principal place of business. They fail to note, however, that the general definition of residence of a corporate defendant in 28 U.S.C.A. § 1391(c) has been held to apply to the Jones Act. *See Pure Oil Co. v. Suarez*, 384 U.S. 202, 86 S.Ct. 1394, 16 L.Ed.2d 474 (1966); *Davis v. Hill Eng'g, Inc.*, 549 F.2d 314 (5th Cir.1977). Under that definition a corporation is deemed to reside in any district in which it is incorporated or licensed to do business or is doing business. *See id.* Again because it is unclear from the lease agreement the extent to which Defendant maintained control over or responsibility for the WHITLEY BEAR and its operations, it is impossible to determine whether Defendants were "doing business" in the coastal waters of Texas.[2] Accordingly, the Motion to Dismiss for Improper Venue is **DENIED** at this time.

## III. Status of Defendants as "Employer" Under the Jones Act

 As an additional ground for dismissal, Defendants conclude their Motion with an assertion that they are not the Jones Act employer of the Decedent. They offer no law or facts in support of their contention other than an example of a Blue Dolphin Fishing, Inc., employment contract that they believe to be similar to one entered into by Decedent. As a cursory survey of the case law indicates, an employee can have more than one Jones Act employer. *See, e.g., Guidry v. South Louisiana Contractors, Inc.*, 614 F.2d 447, 452 (5th Cir.1980). Thus even if Joe Cady entered into an employment agreement with Blue Dolphin Fishing, Inc., this fact is not determinative as to Defendants' status as Decedent's employer. Plaintiff also brings suit for unseaworthiness of the WHITLEY BEAR; this cause of action is independent of the Jones Act and does not require that a shipowner be the injured party's employer in order for liability to attach. An owner who charters his vessel under a bareboat charter remains liable for its unseaworthiness. *See Baker v. Raymond Int'l*, 656 F.2d 173, 184 (5th Cir.1981). Regardless of the success or failure of Plaintiff's Jones Act claim against Defendants, Defendants may be held liable to Plaintiff on alternative grounds.

For the reasons stated above, the Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue is **DENIED**. The Court declines to decide at this time whether Defendants were the Jones Act employer of Decedent. In order to clarify the issues raised herein, Defendants are invited to reurge their Motion to Dismiss no

---

**1.** This is not to say that Defendants would be relieved of all liability even under a demise charter; vessel owners have been held liable to third persons for the unseaworthiness of their vessel and for negligence both predating and postdating the commencement of a demise charter. *See Baker v. Raymond Int'l, Inc.*, 656 F.2d 173, 182, 184 (5th Cir.1981).

**2.** Assuming however that the facts ultimately show Defendants can be held liable as Plaintiff's Jones Act employer, Defendants contacts with Texas would certainly meet the "doing business" test.

sooner than 45 days after the entry of this Order.

**IT IS SO ORDERED.**