Paramjit FARWAH, Individually and as Representative of the Estate of Ravinderpal Farwah, and as Next Friend of Minor Children, Simran Farwah, Amrit Farwah, Harman Farwah, Swaran Farwah, and Sarvinder Farwah, Appellants,

v.

PROSPEROUS MARITIME CORP. and OCS Services (India) Ltd.-Division: Nortrans Maritime Services, Appellees.

and

Paramjit Farwah, Individually and as Representative of the Estate of Ravinderpal Farwah, and as Next Friend of Minor Children, Simran Farwah, Amrit Farwah, Harman Farwah, Swaran Farwah, and Sarvinder Farwah, Appellants,

v.

Valles Steamship Canada, Ltd. and Prudential Shipmanagement Ltd., Appellees.

Nos. 09–06–181 CV, 09–06–347 CV.

Court of Appeals of Texas, Beaumont.

Submitted on Sept. 5, 2006.

Decided April 5, 2007.

Roberts Markel Guerry, Houston, Terry W. Wood, Terry W. Wood, P.C., Beaumont, for appellants.

Robert Klawetter, Christina K. Schovajsa, Eastham, Watson, Dale & Forney, Houston, for appellees.

Before McKEITHEN, C.J., KREGER and HORTON, JJ.

## OPINION

HOLLIS HORTON, Justice.

This is an interlocutory appeal from the trial court's orders granting the special appearances of four defendants and dismissing them from the underlying lawsuit. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(7) (Vernon Supp.2006); TEX.R. CIV. P. 120a. We affirm.

### I.

### Factual Background

While docked at Smith's Bluff, Texas, on June 11, 2004, several members of the *SEATRANSPORT's* crew decided to travel into Port Arthur, Texas, to purchase personal items and supplies for the vessel. Prior to going ashore, the crew members met Fredesvinda Seagler, d/b/a Vinda Service, who had boarded the vessel to sell phone cards. They hired Seagler to take them into town.

After dropping them off in town at various locales, Seagler turned the job of shuttling the crew members over to Juan Esparza. Upon the return trip to the vessel, and when turning into a private driveway, the vehicle driven by Esparza was hit by another vehicle. Ravinderpal Farwah suffered fatal injuries from the collision.

### II.

### Procedural History

Brady E. Ortego, Roberts Markel Bale, Jeffrey D. Roberts, John Bradley Mitchell,

Paramjit Farwah, Ravinderpal's wife (individually, on behalf of Ravinderpal's es-

tate, and as next friend of Ravinderpal's three minor children), and Ravinderpal's parents (hereinafter the "Farwahs") sued several defendants including Prosperous Maritime Corp. ("Prosperous"); OCS Services (India) Ltd.—Division: Nortrans Maritime Services ("OCS"); Valles Steamship Canada, Ltd. ("Valles"); and Prudential Shipmanagement Ltd. ("Prudential"). Each of these defendants is a nonresident and filed a separate special appearance.

The trial court held a hearing on Prosperous's and OCS's special appearances on July 20, 2005, and subsequently denied them on September 8, 2005. Prosperous and OCS appealed. On March 30, 2006, in Cause No. 09–05–387 CV, we affirmed the trial court's order because the special appearances were defective. Soon after, both Prosperous and OCS filed amended special appearances that cured the defects.

On April 21, 2006, the trial court conducted a hearing on the amended special appearances of Prosperous and OCS, and granted them on April 25, 2006. Several days later, the Farwahs requested that the trial court consider additional evidence. On May 23, 2006, without making findings of fact or conclusions of law, the trial court denied the Farwahs' motion to reconsider. On July 10, 2006, the trial court heard Valles's and Prudential's special appearances. On July 18, 2006, the trial court granted their special appearances by written order. The Farwahs appeal the trial court's grant of the special appearances. We subsequently consolidated the Farwahs' appeals.

## III.

### Identification of the Parties

The Farwahs are the survivors and representatives of the estate of Ravinderpal Farwah, an Indian national. Ravinderpal was the Electrical Technical Officer of the *SEATRANSPORT* at the time of the accident.

Prosperous, the Liberian owner of the *SEATRANSPORT*, is not a Texas corporation and does not maintain any offices within the State. At all times relevant to this appeal, Prosperous chartered the *SEATRANSPORT* to Standard Tankers Bahamas Limited, a foreign entity ("Standard Tankers"). The "Tanker Time Charter Party" agreement ("charter agreement") provides that the vessel "may be employed in any part of the world trading always afloat ... as [Standard Tankers] or its agents may direct...." Additionally, the charter agreement provides that the vessel "shall be loaded, discharged, or lightened at any suitable safe port, place, berth, dock, ..., as [Standard Tankers] may direct." Standard Tankers agreed to pay Prosperous a daily rate for using the vessel.

Prudential, a foreign entity, is organized under the laws of Bermuda with its principal place of business in Hamilton, Bermuda. According to the Ship Management Agreement between Prosperous and Prudential, Prudential acted as the *SEATRANSPORT*'s manager. In turn, Prudential contracted with Valles to assist Prudential in its services to Prosperous. Prosperous paid Prudential a flat monthly fee for Prudential's services. Prudential is not a Texas entity and does not maintain any offices within the State.

Valles, a foreign corporation with its principal place of business in Vancouver, Canada, contracted with Prudential to assist Prudential in Prudential's role as the *SEATRANSPORT*'s manager. Among the services that Valles provided, it negotiated with suppliers where the vessel

docked to supply the vessel's needs at that time. In preparation for the vessel's arrival at various ports, Valles worked directly with local husbanding agents. At the time of the accident, the *SEATRANSPORT*'s husbanding agent was Norton Lilly International Company d/b/a Kerr Norton Strachan Agency ("Kerr Norton"). Prudential paid Valles a flat monthly fee for Valles's services. Valles is not a Texas corporation and does not maintain offices in the State.

OCS is a foreign corporation with its principal place of business in Mumbai/Bombay, India. Pursuant to the "Manning Agreement" between OCS and Valles, OCS served as the crewing manager for the *SEATRANSPORT*. OCS agreed to provide Valles with qualified, certified, and medically fit seafarers for the vessel. Valles paid OCS a flat monthly fee for its services. OCS is not a Texas corporation and does not maintain any offices within the State. Under its contract, OCS was not responsible for the day-to-day activities of the vessel or its crew.

## IV.

### Standard of Review

▬▬ Whether a trial court has personal jurisdiction over a defendant is a question of law. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex. 2002). First, we look to the plaintiff's pleadings because the plaintiff "bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the long-arm statute." *Id.* at 793. Then, we determine whether a defendant that is "challenging a Texas court's personal jurisdiction over it" has negated all jurisdictional bases. *Id.* To determine whether all jurisdictional bases were negated, we review all of the evidence relied upon by the parties regarding each respective special appearance hearing. *SITQ E.U., Inc. v. Reata Rests.,*

*Inc.,* 111 S.W.3d 638, 645 (Tex.App.-Fort Worth 2003, pet. denied).

As in this case, when a trial court does not issue findings of fact and conclusions of law, we imply all facts necessary to support the judgment. *BMC Software,* 83 S.W.3d at 795. However, because the appellate record includes both the clerk's and the reporter's records, these implied findings are not conclusive. *Id.* We review the trial court's resolutions of disputed fact issues for both legal and factual sufficiency and the trial court's legal conclusions de novo. *Id.* at 794–95. We will affirm the trial court's judgment on any legal theory that finds support in the evidence, regardless of whether the trial court articulated the correct reason for the ruling. *Id.* at 794 (stating that if trial court's conclusion of law is incorrect, but trial court rendered proper judgment, its erroneous legal conclusion does not require reversal).

## V.

### Personal Jurisdiction

▬▬ A nonresident defendant's contacts with the forum are analyzed to determine if the contacts are sufficient to establish either specific or general jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 413–15, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *BMC Software,* 83 S.W.3d at 795. Personal jurisdiction over nonresident defendants is constitutional when two conditions are met: (1) the defendant has established minimum contacts with the forum state, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *BMC Software,* 83 S.W.3d at 795. Because the Texas long-arm statute extends as far as federal due process permits, the statutory requirements are satis-

fied if the exercise of personal jurisdiction comports with federal due process limitations. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex.1991).

In this case, the special appearance evidence consisted of: the affidavits of the corporate representatives of each respective defendant; various contracts between the parties; statements from the crew members involved in the car accident; the deposition of Vincent Li, Director of Chartering and Insurance for Valles; the deposition of James Mike Bourne, former Kerr Norton employee who managed the office servicing Jefferson County ports; port call lists; a print-out of the internet website for the Valles Group; a gate list; invoices and correspondence between Valles and Texas vendors; a police report; and the affidavit of P.J. Bhagat, a licensed attorney in India. Because the Farwahs submitted additional evidence in a motion to reconsider after the special appearance hearing, we also consider the deadlines established by the Texas Rules of Civil Procedure for submitting evidence in special appearance hearings. *See* Tex.R. Civ. P. 120a(3).

### A. General Jurisdiction Analysis

The Farwahs contend that the *SEATRANSPORT's* calls to various ports in Texas constitute sufficient contacts to permit a Texas court to exercise general jurisdiction over any dispute involving any of the respective dismissed defendants. The Farwahs further contend that the activity in Texas of another vessel managed by Valles and Prudential and manned by OCS, the *SEABORNE,* supports the contention that the court's jurisdiction should extend to each dismissed defendant. Moreover, the Farwahs assert that Valles's purchase of supplies for the *SEATRANSPORT* and the *SEABORNE,* while docked at Texas ports, as well as the use

of Kerr Norton's services in connection with those port calls, supports a Texas court's exercise of general jurisdiction over Prosperous, OCS, Valles, and Prudential. In contrast, the dismissed defendants each contend that the *SEATRANSPORT's* and the *SEABORNE's* ports of call are not made at their direction and assert that the charterer controls the business of the vessels. Additionally, the dismissed defendants assert that Valles's arrangement of services and purchase of supplies for the vessels are not sufficient contacts to support a Texas court's exercise of general jurisdiction over them.

General jurisdiction is established over a nonresident defendant when the nonresident's contacts in a forum are sufficiently continuous and systematic such that the forum may exercise personal jurisdiction over the nonresident even when the cause of action does not arise from or relate to its activities within the forum. *BMC Software,* 83 S.W.3d at 796; *Guardian Royal,* 815 S.W.2d at 228. "When general jurisdiction is asserted, the minimum contacts analysis is more demanding and requires a showing of substantial activities in the forum state." *Guardian Royal,* 815 S.W.2d at 228. In conducting a general-jurisdiction analysis, we are concerned with the quality and nature of the contacts rather than their number. *Am. Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 809–10 (Tex.2002). We do not view each contact in isolation; rather, we must carefully investigate, compile, sort, and analyze all contacts to determine if together they are sufficient to support general jurisdiction. *Id.* at 809. However, "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of *in personam* jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Helicopteros,* 466

U.S. at 417–18, 104 S.Ct. 1868 (footnote omitted).

It is undisputed that each dismissed defendant is organized under foreign law, has its principal place of business outside the United States of America, and does not maintain an office in Texas. None of the dismissed defendants has had employees, officers, or directors who were Texas residents. None has owned, rented, or leased real property within Texas. None has maintained business records in Texas or conducted any banking business in Texas. None has recruited any Texas resident, directly or indirectly in Texas, for employment purposes. None has authorized agents to accept service of process in Texas.

### 1. Ports of Call Analysis

■ The *SEATRANSPORT* and the *SEABORNE* are both vessels chartered to Standard Tankers. In accordance with the charter agreement between Prosperous and Standard Tankers, neither the owner nor its managers control the destination or cargo of the *SEATRANSPORT*. Under the written agreement, the charterer or its agents direct the vessel's itinerary and cargo. With respect to Standard Tankers' control over the *SEABORNE*, its charter contains identical terms regarding Standard Tankers' right to control the vessel's destination.

■ Generally, with respect to vessel owners and managers who do not direct the itinerary of the vessel, port calls are not construed as substantial contacts of a quality sufficient to establish a court's general jurisdiction over a nonresident defendant. *See Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 786–87 (5th Cir.1990) (finding no jurisdiction and discounting quality of contacts regarding twenty port calls of vessels to Louisiana because company that managed vessels did not choose where ves-

sels would make port); *Nicolaisen v. Toei Shipping Co., Ltd.*, 722 F.Supp. 1162, 1165 (D.N.J.1989) (finding that seventeen port calls to New Jersey over a three-to-four year period and shipowner's dealing with time charterer in New Jersey did not establish general jurisdiction); *Conner v. Bouchard Transp. Co.*, 1994 A.M.C. 258, 1993 WL 388274, at *4, 1993 U.S. Dist. LEXIS 13786, at * 7–8 (E.D.Pa.1993) (finding no general jurisdiction despite over 100 port calls to Port of Philadelphia by defendant-owner's vessels, because chartering agreement prompted all calls by which charterer determined destination of defendant's vessel); *Am. Overseas Marine Corp. v. Patterson*, 632 So.2d 1124, 1126–130 (Fla.App.1994) (finding no jurisdiction and discounting quality of contacts relating to port calls in Florida because they were not made on the orders of defendants but instead were made at the direction of the United States military under contracts with the United States). In contrast, the Farwahs suggest that we follow the holding in *Walter v. Sealift, Inc.*, 35 F.Supp.2d 532, 534 (S.D.Tex.1999), in which the district court concluded that it could exercise jurisdiction over the vessel's owner and manager when the vessel was under a time-charter. In *Walter*, the district court judge specifically noted that the defendants remained in operational control of the vessel and generally knew the "precise itinerary of the voyages" undertaken by the vessel. *Id.* The *Walter* court noted, "[O]wners of time—or voyage-chartered vessels typically retain *significant* control, a factor that tends to support a finding of personal jurisdiction." *Id.* (emphasis added).

In contrast, the charter agreement between Prosperous and Standard Tankers provides that the charterer shall direct the vessel's ports of call. Affidavits provided by each dismissed defendant and the depo-

sition of Vincent Li, Valles's Director of Chartering and Insurance, support the dismissed defendants' contention that none of them directed the ports of call of the *SEATRANSPORT* or the *SEABORNE*. The local husbanding agent's manager explained that Standard Tankers, as charterer, directed the vessels' ports of call, and although the vessels ported in Texas repeatedly, all of the vessels' itineraries were subject to change at any time, as the charterer so directed.

Unlike the facts before the court in *Walter*, we find no evidence in this record suggesting that the dismissed defendants had control over the port calls of the *SEATRANSPORT* or the *SEABORNE*. In addition, because the trial court in the case before us granted the special appearances, we imply all facts necessary to support the trial court's judgment. *See BMC Software*, 83 S.W.3d at 795. Here, we imply that the trial court found the dismissed defendants did not control or have the right to control the vessels' ports of call. Thus, despite the evidence showing that the *SEATRANSPORT* called upon Texas ports more than any other jurisdiction, we conclude that the *SEATRANSPORT*'s and the *SEABORNE*'s calls to Texas ports are insufficient to establish general jurisdiction over the dismissed defendants because the dismissed defendants lacked control over the decisions that led to the vessels calling on Texas ports.

### 2. Purchase of Supplies and Use of Services in Texas

The Farwahs further contend that the dismissed defendants regularly contracted with Texas residents to provide repairs and supplies, and that these contracts and their frequency constitute sufficient minimum contacts to establish the court's jurisdiction. To support this contention, the Farwahs attached to their motion for re-

hearing copies of invoices and correspondence between Valles and World Ship Supply (Texas), Inc. ("World Ship Supply") and between Valles and Unitor Shipping Service, Inc. (Houston) ("Unitor"). The documents showed numerous purchases for the vessels. Additionally, the Farwahs claim that Valles frequently contracted with Kerr Norton, the local husbanding agent, to assist Valles in arranging for the vessels' necessary repairs, supplies, and support for crew changes. The Farwahs filed a list of port calls for vessels managed by Valles in which Kerr Norton served as the local husbanding agent. Moreover, the Farwahs refer to the deposition of James Mike Bourne, Kerr Norton's manager, regarding the dismissed defendants' use of Kerr Norton's services.

We note the difference between the special appearance evidence at the April 21, 2006, hearing on Prosperous's and OCS's special appearances, and at the July 10, 2006, hearing on Valles's and Prudential's special appearances. After the April 21 hearing and the trial court's decision to grant the Prosperous and OCS special appearances, the Farwahs filed a motion for reconsideration and attached additional evidence consisting of the invoices. Generally, the rules of procedure contemplate that the special appearance evidence is to be filed on or before the date of the special appearance hearing. *See* TEX.R. CIV. P. 120a(3). Any affidavits must be served seven days prior to the hearing. *Id.* Nothing in the record reflects that the Farwahs requested an order to continue the April 21 special appearance hearing, and nothing in the record indicates that the trial court considered the evidence the Farwahs attached to their motion for rehearing when it denied their motion. Absent evidence that the trial court considered the evidence attached to the motion for rehearing, we assume the trial court did not consider evidence filed outside the

deadlines established by Rule 120a. In contrast, these invoices were properly before the trial court when it heard Valles's and Prudential's special appearances. Therefore, regrading the Valles and Prudential hearings, we assume the trial judge considered the invoices even though it reached a similar conclusion and ruled that it could not exercise jurisdiction.

### a. Valles

The special appearance evidence regarding Valles included port call lists, James Mike Bourne's deposition, Vincent Li's deposition, and several volumes of invoices and correspondence between Valles and World Ship Supply, and Valles and Unitor. The invoices, which reflect purchases from November 2003 through December 2005, relate to purchases for both the *SEATRANSPORT* and the *SEABORNE* that occurred prior to and after the filing of the Farwahs' suit. The last port calls included in the port call lists occurred in June 2005.

Because the special appearance evidence included purchases made after the Farwahs filed suit, we first address the invoices that we presume the trial court excluded in determining whether the trial court had jurisdiction over the Farwahs' claims. In *Double Eagle Resorts, Inc. v. Mott,* No. 09–06–387 CV, 216 S.W.3d 890, 897, 2007 Tex.App. LEXIS 1099, at *14 (Tex.App.-Beaumont, Feb. 15, 2007, no pet. h.), we held that in a general-jurisdiction inquiry the relevant contacts to consider are those existing at the point the plaintiffs requested citation be issued on their suit. Although the trial court's file would reflect when the Farwahs first added Valles to their suit, when it issued citation, and when Valles first appeared, we are unable to determine from the record before us the date citation was issued or the date that Valles was first served. However, based on the allegations in the Far-

wahs' Seventh Amended Petition, which is before us, it appears that by July 14, 2005, the Farwahs had added Valles as a defendant in their suit. Therefore, for purposes of this appeal, we presume the trial court considered the invoices dated prior to July 2005 in evaluating whether it could exercise general jurisdiction over Valles. *Id.*

The record reflects that on the occasions the *SEATRANSPORT* and the *SEABORNE* were in a Texas port, the amount of business conducted between Valles and Texas residents varied on a day-to-day basis. During the period between November 2003 and June 2005, the invoices reflect that Valles contracted with Texas vendors on approximately forty to fifty days. The record further reflects that between April 2003 and June 2005, the *SEATRANSPORT* and the *SEABORNE* docked at a Texas port approximately seventy-eight times for an approximate total of 236 days.

Although the special appearance evidence is vague, it supports the proposition that Valles conducted business with Texas residents somewhere between 100 and 265 days in the twenty-seven month period prior to July 2005. Even if the evidence supported a finding that Valles conducted business on as many as 265 days during that twenty-seven month period, the nature of the contacts, consisting of the purchase of necessary services and supplies for the vessel, is not sufficiently continuous and not of a sufficient quality to satisfy the requirements of the Constitution. Despite the frequency, mere purchases, or their equivalent, are insufficient to satisfy the jurisdictional analysis over a nonresident defendant when the purchases do not relate to the causes of action. *See Helicopteros,* 466 U.S. at 418, 104 S.Ct. 1868. It is not the mere quantity of a nonresident's contacts that demonstrates a significant relationship with Texas; rather, we are

concerned with the quality of contacts. *See Am. Type Culture Collection*, 83 S.W.3d at 809–10.

With respect to the quality of contacts, we consider among other factors, whether the choice to do business in Texas was Valles's or merely a coincidence because of another entity's decision to direct the vessels to Texas. The record shows that the only reason Valles purchased supplies in Texas and contracted with Kerr Norton is that Standard Tankers chose Texas ports of call. We conclude that the nature of this arrangement diminishes the quality of Valles's contacts and supports the trial court's ruling that Valles did not purposefully direct its business activity to Texas. *See Am. Type Culture Collection*, 83 S.W.3d at 809 (discounting quality of contact regarding defendant's attendance at five conferences in Texas when defendant did not select conference locations); *Reyes v. Marine Drilling Cos.*, 944 S.W.2d 401, 402–04 (Tex.App.-Houston [14th Dist.] 1997, no writ) (discounting quality of contact when defendant sent representatives to Texas at least 204 times to perform quality-assurance inspections that were necessitated under contractual obligations between defendant and United States government).

We also consider the dollar value of Valles's contacts. From the record before us, it appears that Valles's purchases from the various Texas vendors amounted to approximately $500,000. But it is also apparent that Valles manages other ships. Because the record does not contain evidence of the percentage of Valles's purchases from Texas residents, we are unable to conclude that the nature and quality of this evidence established a significant or substantial contact with Texas. Therefore, based on the record before it, the trial court did not err in concluding that the quality and nature of Valles's contacts with Texas did not support the court's exercising general jurisdiction over Valles.

After carefully analyzing the record, including the quality and nature of the contacts, we find no error in the trial court's ruling that Valles's contacts with Texas were insufficient to support its exercise of jurisdiction. *See Am. Type Culture Collection*, 83 S.W.3d at 810. Therefore, the trial court did not err in granting Valles's special appearance.

### b. Prudential

■ The evidence regarding Prudential's special appearance consists of the same documents before the trial court with respect to Valles. However, the invoices and correspondence in evidence were between (1) Valles and World Ship Supply and (2) Valles and Unitor. Prudential is not listed as a party to the transactions. Despite the absence of direct evidence of Prudential's business transactions in Texas, the Farwahs contend that we should attribute Valles's Texas contacts to Prudential because all of the dismissed defendants, including Prudential and Valles, operate as one entity or as a single business enterprise. The dismissed defendants in contrast maintain that they are separate entities.

Previously, this court discussed the Texas Supreme Court's application of the alter ego doctrine in the context of long-arm jurisdiction. *See Carlson Mfg., Inc. v. Smith*, 179 S.W.3d 688 (Tex.App.-Beaumont 2005, no pet.). In that case, we stated that " '[t]o "fuse" the parent company and its subsidiary for jurisdictional purposes, the plaintiffs must prove the parent controls the internal business operations and affairs of the subsidiary.' " *Id.* at 693 (quoting *BMC Software*, 83 S.W.3d at 799). However, this control must exceed that normally associated with common owner-

ship and directorship. *Id.* We also noted that two separate corporations are presumed by Texas law to be distinct entities and that courts will not disregard their separate legal identities absent evidence demonstrating that the two entities ceased to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice. *Id.* (citing *BMC Software*, 83 S.W.3d at 798–99).

Prudential is a Bermuda entity with its principal place of business in Hamilton, Bermuda. Valles is a foreign corporation with its principal place of business in Vancouver, Canada. The affidavit attached to Prudential's special appearance states that Prudential "is not and has never been owned by Valles." Additionally, Vincent Li testified regarding the dismissed defendants' affiliations with each other, and his testimony establishes that Prudential and Valles are both part of the "Valles Group," a non-party to this suit. Therefore, the record does not demonstrate that Prudential is a subsidiary of Valles Steamship Canada, Ltd., the party before us. Moreover, the Farwahs presented no evidence that Valles Steamship Canada, Ltd. controlled Prudential's operations or that Prudential failed to observe corporate formalities. While Valles and Prudential conducted business that mutually benefitted the vessels they serviced, their interaction does not provide a basis for disregarding the separate nature of each corporation. *See Carlson Mfg.*, 179 S.W.3d at 694. Based on the evidence before it, the trial court correctly concluded that it could not attribute Valles's contacts to Prudential, and that Prudential's contacts were not sufficient to conclude that it had purposefully availed itself of the protection of Texas law by doing business in Texas.

#### c. Prosperous

The evidence applicable to Prosperous's special appearance consists of the same evidence we have discussed as relevant to Valles, with the exception of the numerous invoices between (1) World Ship Supply and Valles, and (2) Unitor and Valles. As explained above, the numerous invoices were filed after the special appearance hearing and there is no indication that the Farwahs obtained leave to file the evidence subsequent to the hearing of April 21, 2006. *See* Tex.R. Civ. P. 120a(3).

The Farwahs' alter ego claim regarding Prosperous is similar to their claim against Prudential. However, regardless of whether the Farwahs' evidence is sufficient to show that Valles and Prosperous are alter egos, if the contacts for Valles are insufficient for general jurisdiction, the contacts for Prosperous are also insufficient because the special appearance evidence applicable to Prosperous demonstrates even less business activity than that shown for Valles. *See Helicopteros*, 466 U.S. at 418, 104 S.Ct. 1868. In addition, the Farwahs fail to show that Valles and Prosperous are alter egos. Therefore, the trial court did not err when it granted Prosperous's special appearance.

#### d. OCS

The trial court considered the same evidence for OCS as it considered for Prosperous's special appearance. We likewise conclude that the record of OCS's contacts does not supply sufficient evidence to establish that a Texas court could exercise general jurisdiction over it. Therefore, the trial court did not err when concluding that it could not exercise jurisdiction over OCS.

### 3. Consent–to–Sue Provision

Last, the Farwahs claim that the dismissed defendants waived their due process rights and agreed to legal action in

Texas because of a provision in fine print at the bottom of World Ship Supply's invoices. By its terms, the invoice's provision applies to foreign government vessels. There is no evidence that the *SEA-TRANSPORT* or the *SEABORNE* are government vessels. Moreover, the Farwahs present no evidence that they were "intended third-parties" to these purchases. *In re Palm Harbor Homes, Inc.,* 195 S.W.3d 672, 677 (Tex.2006) (holding that a third-party may enforce contract terms when it was not a party if contracting parties intended the contract to benefit the third-party and the contract was entered into for the third-party's benefit). Because the terms do not appear to apply to the Farwahs, and because there is no evidence that the term was intended for their benefit, we conclude that the consent-to-sue provision is not relevant to the question of whether a Texas court could exercise jurisdiction over the Farwahs' claims.

### B. Specific Jurisdiction Analysis

■■■■ The Farwahs' petition generally asserts claims for negligence based on the dismissed defendants' breach of their alleged non-delegable duty to provide Ravinderpal a safe workplace, safe ingress and egress, and safe transportation, all while in the course and scope of his employment. "[W]hen a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum, the State is exercising 'specific jurisdiction' over the defendant." *Helicopteros,* 466 U.S. at 414 n. 8, 104 S.Ct. 1868; *BMC Software,* 83 S.W.3d at 796. "[T]he touchstone of jurisdictional due process analysis has been 'purposeful availment.'" *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 784 (Tex.2005). Purposeful availment requires a defendant to seek some benefit,

advantage, or profit by "availing" itself of the jurisdiction. *Id.* at 785.

■■■ In addition to this requirement, the litigation must also "result from alleged injuries that 'arise out of or relate' to those activities" to satisfy the court's proper exercise of jurisdiction. *Guardian Royal,* 815 S.W.2d at 228 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)); *Zac Smith & Co. v. Otis Elevator Co.,* 734 S.W.2d 662, 663 (Tex.1987). Recently, the Texas Supreme Court addressed the "relate to" requirement, and the Court reiterated that to establish specific jurisdiction, "there must be a substantial connection" between the nonresident defendant's contacts and the "operative facts of the litigation." *Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 585, 2007 WL 623805, 50 Tex. Sup.Ct. J. 498, 2007 Tex. LEXIS 188, at *39 (Tex. Mar. 2, 2007); *Guardian Royal,* 815 S.W.2d at 229–33.

■■■ Under a theory of specific jurisdiction, when the trial court has declined to exercise jurisdiction, we first examine the nature of the dismissed defendant's forum contacts to determine whether the dismissed defendant purposefully availed itself of conducting business here. *See Michiana,* 168 S.W.3d at 784–85. Although the Farwahs argue that we should use the alter ego doctrine to evaluate the contacts of the collective dismissed defendants, we are required to evaluate the evidence presented as to each of the dismissed defendants individually.

■■■ With respect to the nature of Prosperous's and OCS's forum contacts, the special appearance evidence fails to establish that either of them was Valles's alter ego. Prosperous, like Prudential, is part of the "Valles Group," a non-party. OCS, on the other hand, is not affiliated with the "Valles Group." Prosperous is a

foreign corporation with its principal place of business in Liberia. OCS is a foreign corporation with its principal place of business in Mumbai/Bombay, India. The evidence in the record of the interaction between Valles, Prosperous, and OCS does not provide a sufficient basis for disregarding the separate nature of each corporation. *See Carlson Mfg.*, 179 S.W.3d at 694. Therefore, Valles's contacts may not be attributed to Prosperous, OCS, or Prudential to determine whether sufficient minimum contacts existed for purposes of satisfying the first prong of our specific jurisdiction analysis.[1] *See Moki Mac*, 221 S.W.3d at 576, 2007 Tex. LEXIS 188, at *12; *Michiana*, 168 S.W.3d at 784–85; *Am. Type Culture Collection*, 83 S.W.3d at 806.

Examining the individual activity shown for Prosperous, OCS, and Prudential, the special appearance evidence fails to show that any of them purposefully availed themselves individually of the protection of Texas law by directing their business to Texas. As a result, the trial court correctly concluded that it could not exercise jurisdiction over them.

■ With respect to Valles, the invoices in the record demonstrate that Valles contracted with various Texas vendors while the *SEATRANSPORT* and the *SEABORNE* were docked at Texas ports in order to supply the needs of these vessels. Valles also contracted with Kerr Norton to assist it in servicing these two vessels. As a result, we find the evidence is sufficient to show that Valles frequently serviced these vessels while they were docked in Texas and thereby, purposefully availed itself of the benefits and protections of Texas law. *See Michiana*, 168 S.W.3d at 784–85. Nonetheless, "purposeful availment alone will not support an exercise of specific jurisdiction." *Moki Mac*, 221 S.W.3d at 579, 2007 WL 623805, 2007 Tex. LEXIS 188, at *22. To meet the requirements of the Constitution, "there must be a substantial connection between those contacts and the operative facts of the litigation." *Id.* 221 S.W.3d at 585, *39.

Thus, with respect to Valles, we must also address whether the operative facts of the Farwahs' claims are substantially connected to Valles's activity in Texas. *Id.* The claim that the injuries would not have occurred "but for" Valles's presence in Texas is insufficient. *Id.* 221 S.W.3d at 581, *28. In this case, the operative facts are that (1) Ravinderpal was employed as a member of the *SEATRANSPORT* on the day of the accident; (2) the car accident, which resulted in Ravinderpal's death, occurred in Port Arthur, Texas, on

---

1. In their brief on appeal, the Farwahs rely principally on a single business enterprise theory in their argument that Valles's contacts should be attributed to the other dismissed defendants. Although they do not appear to rely on an agency theory, agency principles generally allow a court to allocate an agent's contacts to its principal. *See Schott Glas v. Adame*, 178 S.W.3d 307, 315 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). However, an agency relationship cannot be presumed and the burden of proof is on the party asserting the existence of the relationship. *See id.* Although Valles contracted with Prudential, the contract expressly provided that Valles was not Prudential's agent. Therefore, with respect to Valles's business with Texas vendors, it was within the trial court's discretion to decline to allocate Valles's business contacts to Prudential or to Prudential's principal, Prosperous. Regarding OCS, there is no evidence that it entered into any business transactions in Texas and, as a result, there are no Texas contacts to attribute to the other dismissed defendants. While proving that Valles acted as an agent would allow Valles's contacts to be attributed to Prudential or Prosperous, our conclusion that the trial court properly declined to exercise jurisdiction would not change because the accident is not substantially related to Valles's contacts.

property not alleged to be or shown to have been owned or controlled by Valles; and (3) Seagler, the person who agreed to provide transportation, and Esparza, the driver of the vehicle occupied by Ravinderpal, were not employees subject to the control of Valles at the time of the accident.

Regarding the Farwahs' negligence claims, we note that a Texas employer's duty to provide a safe workplace generally arises from the employer's control over the safety and security of its premises. *Exxon Corp. v. Tidwell,* 867 S.W.2d 19, 23 (Tex. 1993). It appears that Esparza was not controlled by Valles and we have already stated that the accident did not happen on the vessel. Thus, with respect to the evidence of control, there is no evidence in the record demonstrating that Valles had a general duty to control the activity on premises that it neither owned nor controlled.

 Nevertheless, a defendant in some circumstances may become liable for the negligence of independent contractors that it hires. In cases extending liability to defendants who hire independent contractors, the defendant's duty emanates from the control the defendant retains over the details of the work from which the injury arises. *See Hoechst–Celanese Corp. v. Mendez,* 967 S.W.2d 354, 358 (Tex.1998) (premises owner that issued safety guidelines and made inspections of independent contractor's work owed limited duty that its precautions not unreasonably increase the probability and severity of injury); *Clayton W. Williams, Jr., Inc. v. Olivo,* 952 S.W.2d 523, 528 (Tex.1997) (general contractor liable for injuries of an independent contractor's employee only if the general contractor exercised supervisory control over the injury-causing activity). In reviewing the special appearance evidence, we find no contract between Valles and

Esparza that demonstrates that Valles had a right to control Esparza's driving activities prior to the accident. Further, there is no allegation that Valles caused the accident by virtue of its control over Esparza's driving. The Farwahs also allege that Valles failed to provide safe transportation and ingress and egress. With respect to these claims, Texas law recognizes that an employer who hires an independent contractor to transport its employees can become liable for negligent hiring if the employer knew or should have known that its contractor was incompetent and a third person was injured because of the contractor's incompetency. *Mireles v. Ashley,* 201 S.W.3d 779, 782 (Tex.App.-Amarillo 2006, no pet.); *Wasson v. Stracener,* 786 S.W.2d 414, 422 (Tex.App.-Texarkana 1990, writ denied). An independent contractor driver's incompetency is typically proven by showing that the driver is unlicensed or reckless. *See Mireles,* 201 S.W.3d at 783–84; *see generally Schneider v. Esperanza Transmission Co.,* 744 S.W.2d 595, 596 (Tex.1987) (elements of negligent entrustment of an automobile include the entrustment of a vehicle to an unlicensed, incompetent, or reckless driver). In this case, there was no proof or allegation that Esparza was unlicensed or incompetent, or that Esparza's negligence caused the collision. Thus, the special appearance evidence does not show that Valles negligently hired Seagler or Esparza.

In summary, the special appearance evidence does not demonstrate that Valles owned or controlled the premises where the collision occurred, that Valles controlled or exercised a right to control Esparza, or that Esparza was an unlicensed or incompetent driver. These are the operative facts of this litigation. Thus, the Farwahs' evidence fails to show that Valles's activities in the forum—servicing

the vessels it managed—were substantially connected to the operative facts of the litigation. *See Moki Mac,* 221 S.W.3d at 585, 2007 Tex. LEXIS 188, at \*39; *compare EMI Music Mexico, S.A. de C.V. v. Rodriguez,* 97 S.W.3d 847, 856–58 (Tex. App.-Corpus Christi 2003, no pet.) (Plaintiffs' pleadings and the special appearance evidence provided sufficient jurisdictional allegations with respect to the plaintiffs' claims arising out of an accident that resulted from defendant's alleged negligence in hiring the driver.). As a result, the trial court did not err in dismissing Valles. *See Int'l Shoe,* 326 U.S. at 317, 66 S.Ct. 154.

## V.

### Conclusion

We find no error in the trial court's rulings granting the special appearances of Prosperous, OCS, Prudential, and Valles. The record does not show that any of the dismissed defendants established continuous and systematic contacts with Texas of such quality and nature that a Texas court could subject them to defending a suit in Texas based upon a theory of either general or specific jurisdiction. The Farwahs' claims do not arise from or relate to Valles's purposeful contacts with Texas; and we find that Prosperous, OCS, and Prudential did not have purposeful contacts with Texas. Because the dismissed defendants negated all bases of jurisdiction, we affirm the judgment of the trial court dismissing them from this case.

AFFIRMED.