# In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

### NO.  09-15-00195-CV
_____

### AMERICAN FINASCO, INC., Appellant

### V.

### JIMMY THRASH AND HELEN THRASH, Appellees

**On Appeal from the 284th District Court**
**Montgomery County, Texas**
**Trial Cause No. 14-06-06175 CV**

### MEMORANDUM OPINION

In this appeal, we are asked to review whether the trial court erred by granting the special appearances of two nonresidents who asserted they were not amenable to suit in Texas in a case filed by a Texas corporation alleging that the individuals were liable to it on its claims for breach of contract and unjust enrichment. Because the record before us demonstrates that the corporation failed to meet its burden to show that the nonresident defendants could reasonably be expected to be sued in Texas,

1

we hold the trial court properly granted the special appearances and ordered the case dismissed for lack of jurisdiction.

## Background

In 2013, American Finasco, Inc., a Texas corporation, entered into a written agreement with Ag Pilots, Inc., a Mississippi corporation owned by Jimmy and Helen Thrash. The Thrashes are Mississippi residents. Under their agreements with American Finasco, Jimmy Thrash, as Ag Pilots' president, contracted to pay American Finasco a percentage of the savings that Ag Pilots might realize should American Finasco successfully negotiate a reduction in a debt that Ag Pilots owed to Capital One, N.A. In 2014, Capital One, Ag Pilots, and the Thrashes agreed to reduce Ag Pilots' debt to an agreed judgment in a Mississippi federal court. Under the terms of the agreed judgment, Ag Pilots and the Thrashes are jointly and severally liable to Capital One for approximately $1,750,000.

In June 2014, American Finasco sued Ag Pilots and Jimmy Thrash for failing to pay for the services that it claimed it had performed in reducing Ag Pilots' and the Thrashes' debt to Capital One. In its original petition, American Finasco alleged that Ag Pilots and Jimmy Thrash had failed and refused to pay American Finasco for the services it rendered in negotiating the reduction of Ag Pilots' debt. American

2

Finasco also alleged that "Jimmy Thrash should be held personally liable for any acts of AG Pilots, Inc."

When Ag Pilots answered American Finasco's suit, it did not file a special appearance. Jimmy Thrash, however, responded to American Finasco's suit by filing a verified special appearance, and he answered subject to his special appearance. In his special appearance, Jimmy alleged that he resides in Mississippi, does not conduct business in Texas, and has no contacts in Texas. He also alleged that he did not execute the written agreement with American Finasco in his individual capacity.

Several months later, Ag Pilots went into bankruptcy. Shortly after that, American Finasco amended its petition, dismissing Ag Pilots from the suit. However, by amended petition, American Finasco also named Helen Thrash as another defendant, and it alleged that Jimmy and Helen Thrash were guarantors under the agreements they had executed on Ag Pilots' behalf. In response to American Finasco's amended petition, Helen Thrash filed a verified special appearance. Helen alleged in her special appearance that she is a Mississippi resident, that she does not conduct business in Texas, and that she did not execute any agreements with American Finasco in her individual capacity.

American Finasco filed a response to the Thrashes' special appearances, and it supported its response with an affidavit of Mitchell Vicknair, American Finasco's

3

president and CEO. In Vicknair's affidavit, Vicknair authenticated the various documents the Thrashes had executed with American Finasco, which indicate that they authorized American Finasco to negotiate a settlement of Ag Pilots' debt. These agreements, however, are silent regarding the state in which American Finasco's services were to be performed. The American Finasco contract documents are also silent regarding the identity of the state in which American Finasco was incorporated, and regarding where American Finasco would perform its work. In addition to its written agreement with Ag Pilots, Vicknair's affidavit authenticated (1) a copy of a judgment, rendered in Mississippi, which holds Ag Pilots, Jimmy Thrash, and Helen Thrash jointly and severally responsible for Ag Pilots' debt; and (2) three pages of a twenty-five page settlement agreement made by Ag Pilots, the Thrashes, and Capital One, which memorialized the agreements between Capital One, Ag Pilots, and the Thrashes regarding the personal obligations the Thrashes had to Capital One regarding Ag Pilots' debt. However, Vicknair's affidavit is silent about whether American Finasco negotiated the agreement with Capital One that led to the agreed judgment between Capital One and the Thrashes, or whether it negotiated that agreement in whole or in part in Texas. Vicknair's affidavit does state that American Finasco's agreement with Ag Pilots and the Thrashes was based on

4

documents created in Texas, which were then forwarded to the Thrashes for their signatures.

In February 2015, American Finasco filed its second amended petition. In it, American Finasco alleged that the Thrashes "reached out and retained [American Finasco] in Texas[.]" However, this allegation, which is not supported by any evidence, is inconsistent with the affidavits that were filed by Jimmy and Helen Thrash to support their special appearances. According to the affidavits they filed, the Thrashes swore that they had not personally conducted any business activity in Texas and had no purposeful business contacts in Texas. Other than Vicknair's first affidavit and the documents that the affidavit authenticated, American Finasco provided the trial court with no additional evidence to show where it had performed its work. Approximately three weeks after American Finasco amended its petition, the trial court granted the Thrashes' special appearances and dismissed American Finasco's suit.

Consent to Jurisdiction

In its first issue, American Finasco argues that the Thrashes executed "contracts with a forum selection clause naming Texas as the forum state for all disputes." American Finasco concludes that based on the forum-selection clause in Ag Pilots' contract, the Thrashes waived their right to contest its claim that the

5

Thrashes were subject to the jurisdiction of a Texas court for disputes relating to American Finasco's work.

Under Texas law, if a party contractually consents to jurisdiction in a particular forum, no due-process or minimum-contacts analysis is necessary. *See In re Fisher*, 433 S.W.3d 523, 532 (Tex. 2014). As creatures of contract, courts must first determine whether a forum-selection clause applies to the claims the plaintiff has asserted in its suit. *See Phx. Network Techs. (Europe) Ltd. v. Neon Sys., Inc.*, 177 S.W.3d 605, 611 (Tex. App.—Houston [1st Dist.] 2005, no pet.). To determine if the forum-selection clause in the Ag Pilots/American Finasco contract applies, we make a "common-sense examination of the claims and the forum-selection clause to determine if the clause covers the claims." *In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 677 (Tex. 2009) (per curiam).

The forum-selection clause at issue in this case is contained in the Retainer and Fee Agreement, an agreement signed by Jimmy Thrash in his capacity as the president of Ag Pilots. The clause provides that "[a]ny claims, suits[,] or causes of action **against** American Finasco arising directly or indirectly from this agreement shall be brought exclusively in the jurisdiction of Montgomery County, TX." (emphasis added). While the parties dispute whether Jimmy Thrash signed this agreement in any capacity other than as president of Ag Pilots, we need not resolve

6

whether American Finasco alleged sufficient facts to demonstrate that Jimmy could be sued individually based on the American Finasco/Ag Pilots contract to determine whether the forum-selection clause applies to American Finasco's case against the Thrashes. The forum-selection clause contemplates that actions filed **against** American Finasco would be filed in Texas if a dispute arose under the agreement, but it does not indicate that the clause applies to a case in which the Thrashes did not file any claims **against** American Finasco. In summary, the forum-selection clause does not encompass claims, suits, or causes of actions filed by American Finasco against other parties under the express terms of the parties' written agreements.

We conclude the forum-selection clause does not apply to American Finasco's claims against the Thrashes. Therefore, American Finasco's first issue is overruled. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005) (providing that courts are to give contract terms their plain, ordinary, and generally accepted meaning unless the contract shows otherwise).

## Specific Jurisdiction

In its second issue, American Finasco contends that the Thrashes did business with American Finasco under the terms of its written agreement in Texas, that their contacts were purposeful, and that they should have foreseen they could be sued in

7

a Texas forum should the written agreements regarding Ag Pilots' debt be dishonored. American Finasco concludes that the trial court erred in failing to find that it could exercise specific jurisdiction over the Thrashes based on the contacts they had with Texas under the written agreements they executed with American Finasco.

*Standard of Review*

Trial courts are required to resolve special appearances based on the parties' pleadings, any stipulations between the parties, the affidavits and attachments the parties filed, the results of any discovery, and the oral testimony that is before the court, if any. Tex. R. Civ. P. 120a(3). In resolving the issues raised by a defendant's special appearance, "the plaintiff and the defendant bear shifting burdens of proof in a challenge to personal jurisdiction." *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). In this case, American Finasco bore the initial burden of making sufficient allegations in its pleadings to bring the Thrashes, nonresidents of the State, within the provisions of the Texas long-arm statute. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 793 (Tex. 2002); *see also* Tex. Civ. Prac. & Rem. Code Ann. §§ 17.001-.093 (West 2015). The long-arm statute provides that nonresident defendants are considered to be conducting business in Texas if they have contracted "by mail or otherwise with a Texas resident and either party is to

perform the contract in whole or in part in this state[.]" Tex. Civ. Prac. & Rem. Code Ann. § 17.042(1).

Once the plaintiff has alleged sufficient facts to meet its burden to show that a defendant is subject to the State's long-arm statute, the defendant is required to file verified pleadings negating the plaintiff's factual allegations that, otherwise, would show that the trial court had jurisdiction over the nonresident defendants. *BMC Software*, 83 S.W.3d at 793; Tex. Civ. Prac. & Rem. Code Ann. §§ 17.001-.093. In this case, the Thrashes' verified special appearances negated American Finasco's claim that the Thrashes, in their individual capacities, had done business in Texas. Before the special appearance hearing occurred, the Thrashes also filed affidavits to support their special appearances. In their affidavits, the Thrashes swore that they reside in Mississippi and that they did not do business in Texas.

Given the burden-shifting analysis used in special appearance proceedings, and in light of the verified pleadings and evidence the Thrashes filed to support their special appearances, American Finasco bore the burden to prove that American Finasco performed all or part of its work under its agreements with Ag Pilots and the Thrashes in Texas. *See Kelly*, 301 S.W.3d at 659 (noting that after the defendant negates plaintiff's allegations regarding jurisdiction, "[t]he plaintiff can then respond with its own evidence that affirms its allegations, and it risks dismissal of its lawsuit

9

if it cannot present the trial court with evidence establishing personal jurisdiction"). We further note that as a matter of due process, evidence that a nonresident entered into a contract with a Texas resident does not necessarily establish that the nonresident had sufficient minimum contacts in a state to allow a trial court to exercise jurisdiction over a nonresident defendant. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478-79 (1985).

In an appeal from a trial court's decision granting a special appearance, we review the trial court's conclusion that it could not exercise jurisdiction over the defendant as a question of law. *See Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 805-06 (Tex. 2002).

*Scope of Review*

Because American Finasco's appellate argument relies heavily on information that is found in the evidence that it filed with its motion for new trial, we identify the evidence that we have considered in reviewing the arguments American Finasco has made in its appeal. In support of its motion for new trial, American Finasco provided the court with a second affidavit of Mitchell Vicknair. Vicknair's second affidavit contains evidence that was not before the trial court when it conducted the special appearance hearing. Additionally, Vicknair's second affidavit contains information that was designed to show that American Finasco performed all or part of its work

10

under its agreements with the Thrashes in Texas. For example, Vicknair's second affidavit states that the Thrashes communicated with American Finasco employees who were located in Texas on numerous occasions when it negotiated to reduce the Thrashes' debt to Capital One.

Nonetheless, American Finasco has not raised an issue in its appeal that complains that the trial court erred by allowing its motion for new trial to be overruled by operation of law. *See* Tex. R. Civ. P. 329b(c). In our opinion, no such issue has been raised because such an argument would have no merit, given that nothing in the record shows that Vicknair could not have provided the information in his second affidavit before the special appearance hearing. *See* Tex. R. Civ. P. 320 (allowing trial court to grant new trials on a showing of good cause); *see also Risner v. McDonald's Corp.*, 18 S.W.3d 903, 909 (Tex. App.—Beaumont 2000, pet. denied) ("Generally speaking, a party may not present any additional evidence upon a motion for new trial, where that evidence is not newly discovered.").

Given the issues raised in the appeal, we cannot consider any evidence the parties filed after the trial court ruled on the Thrashes' special appearances. In reviewing a trial court's ruling, an "appellate court should consider only the record as it appeared before the trial court at the time the court made the decision in question." 6 Roy W. McDonald & Elaine A. Grafton Carlson, *Texas Civil Practice*

11

§ 43:4 (2d ed. 1998). The rules governing special appearances contemplate that all of the evidence supporting or negating the pleadings that are relevant to the special appearance hearing will be filed before the trial court conducts the special appearance hearing. For example, affidavits filed in special appearance hearings are required to be filed at least seven days before the court conducts a hearing. Tex. R. Civ. P. 120a(3). We conclude that the pleadings and evidence American Finasco filed with its motion for new trial are not within the scope of review applicable to the issues American Finasco has raised in its appeal. *See Farwah v. Prosperous Mar. Corp.*, 220 S.W.3d 585, 592-93 (Tex. App.—Beaumont 2007, no pet.) (noting that on appeal, the reviewing court would only consider the evidence before the trial court at the time it ruled on the party's special appearance); *see also* 6 McDonald & Carlson, *Texas Civil Practice* § 43:4.

In this case, the trial court resolved the Thrashes' special appearances based on the pleadings and the evidence before it at the time that it ruled. The relevant evidence and pleadings before the court at the time of the hearing consisted of the following: (1) American Finasco's second amended petition, its live pleading; (2) the special appearances of Jimmy and Helen Thrash, including their affidavits; and (3) American Finasco's response, which included the first affidavit of American Finasco's president and CEO, Mitchell Vicknair, and four attached documents.

12

Vicknair's first affidavit and the exhibits attached to it fail to indicate where American Finasco performed all or any part of its work. In summary, when the trial court ruled on the Thrashes' special appearances, the record included no contextual evidence proving that American Finasco performed any of its work in Texas.

*Analysis*

In its appeal, American Finasco argues that the evidence before the trial court established that it performed the work under its written agreements in Texas. While Vicknair's second affidavit addresses where American Finasco performed its work, his first affidavit did not. Instead, Vicknair asserted in his first affidavit that the allegations in American Finasco's petition and response were "true and correct to the best of my knowledge." However, given the allegations in the verified special appearances the Thrashes filed and the sworn statements found in their affidavits, American Finasco's pleadings, even if treated as sworn pleadings, are not evidence that the trial court was required to consider as relevant with respect to proving that the Thrashes, as individuals, had done business under the agreements they signed with American Finasco in Texas. Under Texas law, a parties' pleadings are not a substitute for competent evidence, even if the pleadings are sworn or verified. *Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995); *Hidalgo v. Surety Sav. & Loan Ass'n.*, 462 S.W.2d 540, 545 (Tex. 1971).

13

Under the agreement between Ag Pilots and American Finasco, Ag Pilots was required to pay American Finasco in advance for a portion of its services, and the contract required that the retainer be paid to an American Finasco office located in Montgomery County, Texas. However, evidence that a contract has a Texas remittance clause is alone insufficient to allow a court to acquire jurisdiction over a nonresident defendant when the only evidence of the nonresident's contacts is that it remitted payments to a Texas address. *See U-Anchor Advert., Inc. v. Burt*, 553 S.W.2d 760, 763 (Tex. 1977), *cert. denied*, 434 U.S. 1063 (1978) (holding that an Oklahoma resident could not be required to defend in Texas where his only contacts with Texas consisted of executing a contract in Oklahoma that stipulated the nonresident's payments were to be made in Texas); *see also Weatherford Artificial Lift Sys., Inc. v. A & E Sys. SDN BHD*, 470 S.W.3d 604, 615 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ("An individual's contract with an out-of-state party alone cannot automatically establish sufficient minimum contacts in the other party's home forum.").

Given the allegations in the pleadings and verified special appearances that were before the court when it ruled on the Thrashes' special appearances, and the timely filed evidence before the trial court at that time, we conclude that American Finasco, as a matter of law, failed to show that a Texas court could exercise specific

jurisdiction over the Thrashes based on American Finasco's claims relating to the written agreements. *See Am. Type Culture Collection*, 83 S.W.3d at 805-06; *BMC Software*, 83 S.W.3d at 794-95. We overrule issue two, and affirm the trial court's judgment.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on January 18, 2016
Opinion Delivered January 26, 2017

Before Kreger, Horton, and Johnson, JJ.