Pablo Alejandro WALTER

v.

**SEALIFT, INC., and Sealift Tankships, Inc.**

No. CIV.A. G–98–123.

United States District Court, S.D. Texas, Galveston Division.

Feb. 9, 1999.

Kenneth Ross Citti, Citti & Crinion, Houston, TX, for Ross Citti, mediators.

Matthew D. Shaffer, Shechter and Marshall, Houston, TX, for Pablo Alejandro Walter, plaintiffs.

James Richard Watkins, Royston Rayzor, Galveston, TX, for Sealift Incorporated, Sealift Tankships, Incorporated, defendants.

### ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

KENT, District Judge.

This is a personal injury case arising under the Jones Act, 46 U.S.C.App. § 688 *et seq.*, and general maritime law. Plaintiff allegedly was injured on January 12, 1998 while working aboard Defendants' vessel, the M/V NOBLE STAR. He filed this claim against Defendants on March 9, 1998. Now before the Court is Defendants' Motion to Dismiss for Lack of Personal Jurisdiction of January 7, 1998. For the reasons set forth below, the Motion is **DENIED**.

### I. FACTUAL SUMMARY

Defendant Sealift Tankships, Inc. is a Delaware corporation that owns one vessel, the M/V NOBLE STAR. Defendant Sealift, Inc.

is a Delaware corporation that purports to manage vessels owned by several single-vessel corporate entities such as Defendant Sealift Tankships. In all, Defendant Sealift appears to manage four such vessels. In addition to the NOBLE STAR, they are the WILSON, the CLEVELAND, and the ADVANTAGE. Each of these vessels comes to Texas three to four times a year, a frequency that has not varied significantly during the entire time they have been under the management or ownership of Defendant Sealift. While they are in port in Texas, the vessels typically contract with residents of this state to provide repairs, supplies, and crews. In addition, Defendant Sealift regularly sends employees from its headquarters to Texas to help conduct such dealings.

Plaintiff Pablo Alejandro Walter is a Houston resident who worked aboard the NOBLE STAR. On January 12, 1998, he allegedly was injured when he was struck by a pinch bar dropped by a crewmember who was carrying it up the vessel's crane. Plaintiff subsequently filed suit in this Court.

## II. ANALYSIS

■ Defendants Sealift, Inc. and Sealift Tankships, Inc. are Delaware corporations. Defendants seek dismissal pursuant to Fed. R.Civ.P. 12(b)(2) contending that this Court lacks personal jurisdiction over them. In Federal Court, personal jurisdiction over a nonresident defendant is proper if: (1) the defendant is amenable to service of process under the forum state's long-arm statute; and (2) the exercise of personal jurisdiction over the defendant is consistent with due process. *See Jones v. Petty–Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir.1992). The Texas long-arm statute authorizes service of process on a nonresident defendant if the defendant is determined to be "doing business" in Texas. *See* Tex. Civ. Prac. & Rem.Code Ann. § 17.042. Because the phrase "doing business" has been interpreted to reach as far as the United States Constitution permits, the jurisdictional inquiry under the Texas long-arm statute collapses into a single due-process inquiry. *See Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir.1993).

■ Whether the exercise of personal jurisdiction over Defendants is consistent with the Due Process Clause of the United States Constitution likewise requires a two-pronged inquiry. First, the Court must conclude that Defendants have "minimum contacts" with Texas. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Second, the Court must determine that requiring Defendants to litigate in Texas does not offend "traditional notions of fair play and substantial justice." *Id.; see also Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir.1994); *Ruston*, 9 F.3d at 418. The "minimum contacts" aspect of due process can be satisfied by either finding specific jurisdiction or general jurisdiction. *See Wilson*, 20 F.3d at 647. If the conduct of a defendant that supports personal jurisdiction is related to a stated cause of action, personal jurisdiction is known as "specific jurisdiction." *See Ruston Gas Turbines*, 9 F.3d at 418–19; *Villar v. Crowley Maritime Corp.*, 990 F.2d 1489, 1496 (5th Cir.1993). The minimum contacts prong for specific jurisdiction can be satisfied by a single act if the nonresident defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefit and protection of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (holding that a defendant establishes minimum contacts by purposely engaging in conduct directed toward the forum state "such that [the defendant] should reasonably anticipate being haled into court there"); *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958); *see also Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir.1990) ("It is well settled that specific jurisdiction may arise without the nonresident defendant's ever stepping foot upon the forum state's soil . . . ."). Alternatively, as is the case here, if a defendant has insufficient contacts related to a stated cause of action to support specific jurisdiction, contacts unrelated to the cause of action may confer general jurisdiction. However, these contacts with the foreign state must be both "continuous and systematic" and "substantial." *See Helicopteros Nacionales de Colombia, S.A. v.*

*Hall,* 466 U.S. 408, 417, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984); *Villar,* 990 F.2d at 1496.

At the outset, the Court notes that although the burden is on Plaintiff, he need only make a prima facie showing of jurisdiction, and his allegations in that regard are to be taken as true unless controverted; moreover, any conflicts are to be resolved in his favor. *See Asarco, Inc. v. Glenara, Ltd.,* 912 F.2d 784, 785 (5th Cir.1990).

### 1) *Defendants' Contacts*

 In determining whether Defendants' contacts with Texas are systematic and continuous, the Court looks to their frequency and intensity. Defendants each maintain frequent contacts with this state. Defendant Sealift Tankships operates one vessel, the M/V NOBLE STAR, which it leases to charterers, or lessees, on a time-charter or voyage-charter basis. Under these charters, the NOBLE STAR calls on the Port of Houston three to four times per year, a pattern that is consistent over the past five years. Defendant Sealift Inc. is a "manager and agent" for several steamship companies, among them Sealift Tankships.[1] Defendant Sealift Inc. manages three vessels aside from the NOBLE STAR that regularly call on the Port of Houston: the WILSON, the CLEVELAND, and the ADVANTAGE. Like the NOBLE STAR, each of these vessels comes to Texas three to four times a year, a frequency that has not varied significantly during the entire time they have been under the management or ownership of Defendant Sealift Inc.[2]

The intensity of Defendants' contacts with Texas has uniformly been of a degree that belies their assertions. Defendants argue that because each of these vessels is time-chartered, they have no control over where the charterer sends them. In support of their argument, Defendants cite *Nicolaisen v. Toei Shipping Co.,* in which the court held

that the periodic visits of a time-chartered ship to New Jersey were insufficient to subject the vessel's owner to the general jurisdiction of that forum. *See* 722 F.Supp. 1162, 1165 (D.N.J.1989) (finding that the defendant lacked sufficient contacts). For several reasons, however, the instant case is distinguishable. First, the two charters were distinctly different in nature. In *Nicolaisen,* the owner chartered the vessel to the lessee immediately after its completion. Moreover, the charter was for a term of seven and a half years with an option to purchase at the end of that period. *See id.* at 1163. In the instant case, Defendants time-charter the NOBLE STAR to different lessees for much shorter periods and have done so for the entire time the vessel has been under their ownership. Further, at no time has the NOBLE STAR been the subject of a time charter with a purchase option. Second, there is a difference in the amount of control exercised by the owners in each of the cases. In *Nicolaisen,* the lessee directed where the vessel would make port and what duties the crew would perform. *See id.* at 1165 ("[Defendant's] lack of control over where the [vessel] would make port militates against finding that [Defendant] was reasonably put on notice that it might be called upon to defend actions in New Jersey..."). Defendants in this case, on the other hand, remain in operational control of their vessels and generally know the precise itinerary of the voyages undertaken by them. Indeed, in this Court's experience, the degree of control retained by Defendants in this case is more typical of the time- or voyage-charter arrangement than are the facts of *Nicolaisen.* As this Court and others have noted before, owners of time- or voyage-chartered vessels typically retain significant control, a factor that tends to support a finding of personal jurisdiction. *See Ghio v. Jambon,* 23 F.Supp.2d 724, 727 (S.D.Tex.1998) (noting that the existence of a time or voyage charter

---

1. In his deposition, John Raggio, an officer of Sealift Inc., testified that his company is "basically ... unrelated" to the various single-vessel entities under its management umbrella. However, Raggio serves as a vice president for each of those companies, including Sealift Tankships, Inc.

2. In his deposition, Raggio repeatedly referred to the NOBLE STAR, WILSON, CLEVELAND, and ADVANTAGE as vessels his company, Defendant Sealift Inc., "owned."

would have "significant ramifications" for the fairness of attributing a vessel's contacts to its owner); *see also Agrico Chemical Co. v. M/V BEN W. MARTIN*, 664 F.2d 85, 91 (5th Cir.1981) (noting that owners retain more control over their vessels during time or voyage charters than during demise, or bareboat, charters). Moreover, when Defendants' vessels are in port in Texas, Defendants regularly send employees to meet the vessel and contract with Texas residents to provide repairs, supplies, and crews. These factors, when considered alongside the frequency of Defendants' contacts with Texas, combine to satisfy the minimum contacts prong of the due process analysis.

### 2) *Fair Play and Substantial Justice*

The Court next must consider whether the exercise of jurisdiction over Defendants would offend "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158. To satisfy the Constitution, there must be a sufficient relationship between the defendant and the forum state that it would be "reasonable . . . to require the corporation to defend the particular suit which is brought there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). In evaluating the reasonableness issue, the Court looks to the burden on the defendant, the interests of the forum state, the plaintiff's interest in obtaining relief, and the interests of the several states. *See Bearry*, 818 F.2d at 377.

In this case, the factors demonstrate that the exercise of personal jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice. First, the burden on Defendants of litigating this claim in Texas is not heavy. Although Defendants are both Delaware corporations, they maintain a presence in this area through their frequent visits to Houston. Not only do their vessels call on Texas with some frequency, they also send engineers and other employees to meet the vessels and regularly contract with Texas residents to provide crews, repairs, and supplies for those vessels. Because of these contacts, Defendants could "reasonably anticipate" being haled into court to defend a suit in this forum. Second, the forum state has a clear interest in this litigation. Not only is Plaintiff a resident of Texas, Defendants frequently do business with and hire as crewmembers residents of this State. This state's interest in the safety of Defendants' operations is thus immediately apparent. Third, Plaintiff has a strong interest in maintaining this suit in Texas. He is a resident of Houston and probably does not possess the resources to litigate in another forum. Consequently, the second prong of the personal jurisdiction due process test is satisfied. This court's exercise of personal jurisdiction over Defendants satisfies the requirements of fair play and substantial justice.

Accordingly, after careful consideration of the totality of the circumstances, the Court concludes that personal jurisdiction exists over Defendants Sealift, Inc. and Sealift Tankships, Inc. and that the exercise of jurisdiction would be consistent with constitutional requirements. Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is therefore **DENIED.**

### III.CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is hereby **DENIED.** The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date. The parties are also **ORDERED** to file no further pleadings on these issues in this Court, including motions to reconsider or the like, unless justified by a compelling showing of new evidence not available at the time of the instant submissions. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the Fifth Circuit Court of Appeals, as may be appropriate in due course.

**IT IS SO ORDERED**