**CARLSON MANUFACTURING, INC., Appellant,**

v.

**Charles Shane SMITH, Appellee.**

**No. 09–05–170 CV.**

Court of Appeals of Texas, Beaumont.

Submitted Sept. 1, 2005.

Decided Nov. 3, 2005.

Nathan M. Brandimarte, Jonathan G. Brush, Orgain, Bell & Tucker, LLP, Beaumont, for appellant.

Edward D. Fisher, Provost Umphrey Law Firm, LLP, Beaumont, for appellee.

Before McKEITHEN, C.J., GAULTNEY and KREGER, JJ.

## OPINION

STEVE McKEITHEN, Chief Justice.

This is an interlocutory appeal from the denial of a special appearance. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(7) (Vernon Supp.2005). Allegedly injured in a fall when the seat broke on his tree-mounted deer stand, Charles Shane Smith filed a products liability action against a number of defendants alleged to have placed the deer stand into the stream of commerce. Buckfinder Hunting Products, Inc. ("Buckfinder") submitted to the jurisdiction of the trial court, but Carlson Manufacturing, Inc. ("Carlson") filed a special appearance.[1] *See* TEX.R. CIV. P. 120a. Smith contended Carlson is subject to personal jurisdiction in Texas courts because Buckfinder conducted business in Texas and the two corporations maintain a single business enterprise. Smith also argued to the trial court that Buckfinder is an alter ego of Carlson. On appeal, we must resolve whether the trial court erred: (1) in imputing another corporation's contacts to the appellant; and (2) by denying a special appearance filed by a corporation that conducts no business in Texas and did not manufacture, market, or sell the product at issue in the litigation. We find the evidence does not support the imputation of Buckfinder's activities in the forum state to Carlson; therefore, we reverse the trial court's order and render judgment dismissing the claims against the appellant.

A Texas court may exercise personal jurisdiction over a nonresident defendant to the extent authorized by state and federal due process standards and the long-arm statute. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex.1991). Our long-arm statute allows Texas courts to exercise jurisdiction over foreign defendants who are "doing business" within the state. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997). Due process requires that the nonresident defendant have purposefully established minimum contacts with Texas, and the exercise of personal jurisdiction over the nonresident defendant must not violate traditional notions of fair play and substantial justice. *Guardian Royal*, 815 S.W.2d at 230–31. Purposely established minimum contacts may support the exercise of specific jurisdiction (where the defendant's liability arises from an activity conducted in Texas) or general jurisdiction (where the nonresident maintains continuous and systematic contacts with the forum state). *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795–96 (Tex.2002).

An analysis of specific jurisdiction focuses on the relationship between the defendant, the forum, and the litigation, and requires a substantial connection between the plaintiff's cause of action and the transaction the defendant purposefully consummated in the state. *Guardian Royal*, 815 S.W.2d at 228, 230. The more demanding general jurisdiction analysis "requires a showing of substantial activities in the forum state." *Id.* at 228. The defendant must intentionally avail itself of the privilege of conducting activities within the forum state. *Burger King Corp. v.*

1. The plaintiff's claims against Buckfinder were severed from this suit after Buckfinder Hunting Products, Inc. and Buckfinder Industrial Development, Inc., filed for bankruptcy protection. References in this opinion to "Carlson" are to the appellant, a corporation, and not to Warren Carlson, a non-party witness.

*Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The defendant's activities may consist of direct acts within Texas or conduct outside the state, but must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). A defendant cannot "be haled into a Texas court for the unilateral acts of a third party." *American Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 806 (Tex.2002), *cert. denied,* 537 U.S. 1191, 123 S.Ct. 1271, 154 L.Ed.2d 1025 (2003). Attenuated contacts will not justify the exercise of long-arm jurisdiction. *Id.*

■ Upon filing its special appearance, Carlson assumed the burden to negate all bases of personal jurisdiction alleged by the plaintiff. *See id.; Kawasaki Steel Corp. v. Middleton,* 699 S.W.2d 199, 203 (Tex.1985). An affidavit from Carlson chief executive officer Warren Carlson states that Carlson is a Minnesota corporation that is not registered to do business in Texas, maintains no office in Texas, and neither commits any acts within the state nor consummates any transactions here. Carlson operates a machine shop in Minnesota and has never manufactured, distributed or sold tree stands used by hunters, including the stand used by Smith. Conceding that it is possible that a Carlson employee might on occasion machine a part that would be incorporated into products sold and marketed by Buckfinder, Warren Carlson stated that he had personally examined the stand involved in this case and "did not identify any part of the chair that was made, in whole or in part," by Carlson. According to Warren Carlson, "[t]he tree stand and its associated parts were not manufactured or sold" by the appellant, and the product "was not designed, manufactured, marketed, assembled, distributed, sold, installed, supplied or maintained" by Carlson. Carlson received no consideration from the purchase of the stand by Smith or by co-defendant Precision Archery. Thus, Carlson contends, its independent contacts with Texas do not support the exercise of either specific or general jurisdiction.

Smith does not contest the lack of direct contacts between Carlson and Texas, and relies solely on Buckfinder's contacts with Texas in this transaction to establish *in personam* jurisdiction over Carlson. Other than the product at issue in this case, there is no evidence of any activity by Buckfinder that is connected to the State of Texas. Smith contends Carlson and Buckfinder operate a single business enterprise. Before the trial court, he also claimed Buckfinder is the alter ego of Carlson.

According to Warren Carlson, Carlson owns no shares of Buckfinder or Buckfinder Industrial Development, Inc. ("Buckfinder Industrial"), two separate and distinct corporations chartered by the State of Minnesota. Warren Carlson is the president of all three corporations. Carlson was incorporated many years before the 1999 incorporation of Buckfinder and Buckfinder Industrial and their resources are not integrated with one another. Buckfinder and Buckfinder Industrial operate as separate corporations capitalized as required by Minnesota law, and file separate tax returns from Carlson. The appellant has separate bank accounts. Carlson maintains separate payroll employees from Buckfinder, as well as separate accounting records and records of meetings of its shareholders and board of directors. Subsequent to the filing of the suit, no funds have been transferred to or paid to Carlson by Buckfinder.

To controvert Warren Carlson's affidavit, Smith relies on excerpts from Warren

Carlson's deposition. That deposition testimony established that Buckfinder leases office space in Minnesota from Carlson but maintains its own employee and a separate shipping and receiving department, that Buckfinder owes Carlson rent but has paid neither rent nor utilities, and that Warren Carlson does not have a personal office within Buckfinder's leased space but has an office in Carlson's building. Warren Carlson admitted Carlson occasionally made loans to Buckfinder that were documented but were never paid off. He also admitted that Buckfinder used Carlson's "fixturing" to manufacture a part used in Buckfinder's deer stands. Smith argues this evidence is sufficient for the trial court to find that the corporations operate a single business enterprise, and contends that the operation of a single business enterprise will support the exercise of jurisdiction in this case.

■■■■ In *BMC Software,* the court considered the application of the alter ego doctrine in the context of long-arm jurisdiction. "To 'fuse' the parent company and its subsidiary for jurisdictional purposes, the plaintiffs must prove the parent controls the internal business operations and affairs of the subsidiary." *BMC Software,* 83 S.W.3d at 799. "But the degree of control the parent exercises must be greater than that normally associated with common ownership and directorship; the evidence must show that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice." *Id.* Because Texas law presumes that two separate corporations are distinct entities, the courts will not disregard the separate legal identities of corporations unless that relationship is used to defeat public convenience, to justify wrongs such as violation of the antitrust laws, to protect fraud, or to defend crime. *Id.* at 798. In *BMC Software,* the

court found no evidence to support the trial court's alter ego finding, where the corporations not only shared officers, but also incorporated the other corporation's financial performance in SEC filings, offered a stock option plan to the subsidiary's employees, and had the same letterhead. *Id.* at 799–800. The trial court could not infer control from testimony that the parent company from time to time had employees in the offices of a variety of its subsidiaries. *Id.* at 800.

■■■■ Buckfinder is not a subsidiary of Carlson, and there is no evidence that Carlson controls Buckfinder's operations. Although the appellee presented some evidence that Buckfinder has a parasitic existence upon Carlson, there is no evidence that their arrangement is illegal or that the companies failed to observe corporate formalities. We conclude the trial court could not apply an alter ego theory to assume jurisdiction over Carlson based upon Buckfinder's acts in the State of Texas.

■■■■ On appeal, Smith primarily relies upon the trial court's implied finding that Carlson and Buckfinder comprise a single business entity. Although the Supreme Court has thus far reserved ruling on the issue, several intermediate appellate courts, this Court included, have recognized a concept of "single business enterprise" in one context or another. *Southern Union Co. v. City of Edinburg,* 129 S.W.3d 74, 85–90 (Tex.2003); *National Plan Adm'rs, Inc. v. National Health Ins. Co.,* 150 S.W.3d 718, 744 (Tex.App.-Austin 2004, pet. filed) (recognizing doctrine as a valid equitable means of piercing the corporate veil to impose liability); *Bridgestone Corp. v. Lopez,* 131 S.W.3d 670, 686–87 (Tex.App.-Corpus Christi 2004, pet. granted, judgm't vacated w.r.m.) (finding exercise of jurisdiction comported with due process where two corporations operated

as a single business enterprise); *El Puerto de Liverpool, S.A. de C.V. v. Servi Mundo Llantero, S.A. de C.V.,* 82 S.W.3d 622, 636–37 (Tex.App.-Corpus Christi 2002, pet. dism'd w.o.j.) (affirming denial of special appearance where companies shared common employees, used a centralized accounting system, and performed services for each other); *North Am. Van Lines, Inc. v. Emmons,* 50 S.W.3d 103, 119–21 (Tex.App.-Beaumont 2001, pet. denied) (recognizing equitable doctrine may apply under exceptional circumstances.). *But see SSP Partners v. Gladstrong Invs. (USA) Corp.,* 169 S.W.3d 27, 44 (Tex.App.-Corpus Christi 2005, pet. filed)(declining to extend the doctrine to a party's vicarious liability for the wrongful acts of a non-party). Factors to be considered in determining whether separate corporations should be treated as one enterprise include: (1) common employees; (2) common offices; (3) centralized accounting; (4) payment of wages by one corporation to another corporation's employees; (5) common business name; (6) services rendered by the employees of one corporation on behalf of another corporation; (7) undocumented transfers of funds between corporations; and (8) unclear allocation of profits and losses between corporations. *Paramount Petroleum Corp. v. Taylor Rental Ctr.,* 712 S.W.2d 534, 536 (Tex. App.-Houston [14th Dist.] 1986, writ ref'd n.r.e.). Buckfinder maintained its offices in Carlson's building, but there is no evidence of common employees, centralized accounting, payment of wages, use of a common business name, using the services of the other corporation's employees, undocumented transfers of funds, or allocation of profit and loss. As we have already noted, however, Buckfinder did owe rent to Carlson that it did not pay, and

Buckfinder did use Carlson's equipment to manufacture its products. However, the purpose of the single business enterprise theory, like the alter ego theory and other doctrines designed to pierce the corporate veil, is to prevent an inequitable result. *See Castleberry v. Branscum,* 721 S.W.2d 270, 271 (Tex.1986).[2] Among the reasons recognized in the past for disregarding the corporate fiction are: (1) when it is used as a means of perpetrating fraud; (2) where a corporation is organized and operated as a mere tool or business conduit of another corporation; (3) where it is used to evade an existing legal obligation; (4) where it is employed to achieve or perpetrate a monopoly; (5) where it is used to circumvent a statute; and (6) where the corporate fiction is relied upon as a protection of crime or to justify wrong. *Id.* at 272. None of these factors is present here. The appellee argues that Buckfinder is a mere tool or conduit of Carlson, but there is no evidence that any of the benefits of Buckfinder conducting business in the State of Texas—or anywhere—inured to Carlson.

■ Because this case involves a special appearance where the defendant must purposefully avail itself of the benefits of the forum state and constitutional principles of fair play and substantial justice are at issue, our review must focus upon the defendant's actions and expectations. While the corporations may have conducted business that would benefit their common president, the interactions between the corporations do not provide a basis for disregarding their separate nature. It is not reasonable for Carlson to expect to be called into a Texas court to defend a product liability suit on one of Buckfinder's

---

**2.** *Castleberry* has been largely superceded by subsequent statutory amendments. *See* Tex.

Bus. Org.Code Ann. § 21.223 (Vernon Supp. 2005) (effective January 1, 2006).

products.[3]

We conclude Carlson Manufacturing, Inc. did not purposefully establish sufficient minimum contacts with Texas to support exercising jurisdiction over it. Therefore, the trial court erred in denying the special appearance. The appellant's issues are sustained. We reverse the trial court's order and render judgment dismissing the claims of Charles Shane Smith against Carlson Manufacturing, Inc.

REVERSED AND RENDERED.

---

**3.** Our ruling is limited to the issue of *in personam* jurisdiction over the appellant. We express no opinion on any liability issues in this case.