In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-06-181 CV


NO. 09-06-347 CV


____________________



PARAMJIT FARWAH, INDIVIDUALLY AND AS REPRESENTATIVE OF


THE ESTATE OF RAVINDERPAL FARWAH, AND AS NEXT FRIEND OF


MINOR CHILDREN, SIMRAN FARWAH, AMRIT FARWAH, 


HARMAN FARWAH, SWARAN FARWAH, AND 


SARVINDER FARWAH, Appellants



V.



PROSPEROUS MARITIME CORP. AND OCS SERVICES (INDIA) LTD.- 


DIVISION: NORTRANS MARITIME SERVICES, Appellees



and



PARAMJIT FARWAH, INDIVIDUALLY AND AS REPRESENTATIVE OF


THE ESTATE OF RAVINDERPAL FARWAH, AND AS NEXT FRIEND OF


MINOR CHILDREN, SIMRAN FARWAH, AMRIT FARWAH, 


HARMAN FARWAH, SWARAN FARWAH, AND 


SARVINDER FARWAH, Appellants



V.



VALLES STEAMSHIP CANADA, LTD. AND 


PRUDENTIAL SHIPMANAGEMENT LTD., Appellees











On Appeal from the 136th District Court


Jefferson County, Texas


Trial Cause No. D-173,370 






 OPINION 


 This is an interlocutory appeal from the trial court's orders granting the special
appearances of four defendants and dismissing them from the underlying lawsuit. See Tex.
Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (Vernon Supp. 2006); Tex. R. Civ. P. 120a. 
We affirm.

I.

Factual Background


 While docked at Smith's Bluff, Texas, on June 11, 2004, several members of the 
SEATRANSPORT's crew decided to travel into Port Arthur, Texas, to purchase personal
items and supplies for the vessel. Prior to going ashore, the crew members met Fredesvinda
Seagler, d/b/a Vinda Service, who had boarded the vessel to sell phone cards. They hired
Seagler to take them into town.

 After dropping them off in town at various locales, Seagler turned the job of shuttling
the crew members over to Juan Esparza. Upon the return trip to the vessel, and when turning
into a private driveway, the vehicle driven by Esparza was hit by another vehicle. 
Ravinderpal Farwah suffered fatal injuries from the collision. 


II.

Procedural History


 Paramjit Farwah, Ravinderpal's wife (individually, on behalf of Ravinderpal's estate,
and as next friend of Ravinderpal's three minor children), and Ravinderpal's parents
(hereinafter the "Farwahs") sued several defendants including Prosperous Maritime Corp.
("Prosperous"); OCS Services (India) Ltd. - Division: Nortrans Maritime Services ("OCS");
Valles Steamship Canada, Ltd. ("Valles"); and Prudential Shipmanagement Ltd.
("Prudential"). Each of these defendants is a nonresident and filed a separate special
appearance.

 The trial court held a hearing on Prosperous's and OCS's special appearances on July
20, 2005, and subsequently denied them on September 8, 2005. Prosperous and OCS
appealed. On March 30, 2006, in Cause No. 09-05-387 CV, we affirmed the trial court's
order because the special appearances were defective. Soon after, both Prosperous and OCS
filed amended special appearances that cured the defects.

 On April 21, 2006, the trial court conducted a hearing on the amended special
appearances of Prosperous and OCS, and granted them on April 25, 2006. Several days later,
the Farwahs requested that the trial court consider additional evidence. On May 23, 2006,
without making findings of fact or conclusions of law, the trial court denied the Farwahs'
motion to reconsider. On July 10, 2006, the trial court heard Valles's and Prudential's
special appearances. On July 18, 2006, the trial court granted their special appearances by
written order. The Farwahs appeal the trial court's grant of the special appearances. We
subsequently consolidated the Farwahs' appeals.

III.

Identification of the Parties


 The Farwahs are the survivors and representatives of the estate of Ravinderpal
Farwah, an Indian national. Ravinderpal was the Electrical Technical Officer of the
SEATRANSPORT at the time of the accident.

 Prosperous, the Liberian owner of the SEATRANSPORT, is not a Texas corporation
and does not maintain any offices within the State. At all times relevant to this appeal,
Prosperous chartered the SEATRANSPORT to Standard Tankers Bahamas Limited, a foreign
entity ("Standard Tankers"). The "Tanker Time Charter Party" agreement ("charter
agreement") provides that the vessel "may be employed in any part of the world trading
always afloat . . . as [Standard Tankers] or its agents may direct . . . ." Additionally, the
charter agreement provides that the vessel "shall be loaded, discharged, or lightened at any
suitable safe port, place, berth, dock, . . . , as [Standard Tankers] may direct." Standard
Tankers agreed to pay Prosperous a daily rate for using the vessel.

 Prudential, a foreign entity, is organized under the laws of Bermuda with its principal
place of business in Hamilton, Bermuda. According to the Ship Management Agreement
between Prosperous and Prudential, Prudential acted as the SEATRANSPORT's manager. 
In turn, Prudential contracted with Valles to assist Prudential in its services to Prosperous. 
Prosperous paid Prudential a flat monthly fee for Prudential's services. Prudential is not a
Texas entity and does not maintain any offices within the State. 

 Valles, a foreign corporation with its principal place of business in Vancouver,
Canada, contracted with Prudential to assist Prudential in Prudential's role as the
SEATRANSPORT's manager. Among the services that Valles provided, it negotiated with
suppliers where the vessel docked to supply the vessel's needs at that time. In preparation
for the vessel's arrival at various ports, Valles worked directly with local husbanding agents. 
At the time of the accident, the SEATRANSPORT's husbanding agent was Norton Lilly
International Company d/b/a Kerr Norton Strachan Agency ("Kerr Norton"). Prudential paid
Valles a flat monthly fee for Valles's services. Valles is not a Texas corporation and does
not maintain offices in the State. 

 OCS is a foreign corporation with its principal place of business in Mumbai/Bombay,
India. Pursuant to the "Manning Agreement" between OCS and Valles, OCS served as the
crewing manager for the SEATRANSPORT. OCS agreed to provide Valles with qualified,
certified, and medically fit seafarers for the vessel. Valles paid OCS a flat monthly fee for
its services. OCS is not a Texas corporation and does not maintain any offices within the
State. Under its contract, OCS was not responsible for the day-to-day activities of the vessel
or its crew.



IV.

Standard of Review


 Whether a trial court has personal jurisdiction over a defendant is a question of law. 
BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002). First, we look
to the plaintiff's pleadings because the plaintiff "bears the initial burden of pleading
sufficient allegations to bring a nonresident defendant within the provisions of the long-arm
statute." Id. at 793. Then, we determine whether a defendant that is "challenging a Texas
court's personal jurisdiction over it" has negated all jurisdictional bases. Id. To determine
whether all jurisdictional bases were negated, we review all of the evidence relied upon by
the parties regarding each respective special appearance hearing. SITQ E.U., Inc. v. Reata
Rests., Inc., 111 S.W.3d 638, 645 (Tex. App.-Fort Worth 2003, pet. denied).

 As in this case, when a trial court does not issue findings of fact and conclusions of
law, we imply all facts necessary to support the judgment. BMC Software, 83 S.W.3d at 795. 
However, because the appellate record includes both the clerk's and the reporter's records,
these implied findings are not conclusive. Id. We review the trial court's resolutions of
disputed fact issues for both legal and factual sufficiency and the trial court's legal
conclusions de novo. Id. at 794-95. We will affirm the trial court's judgment on any legal
theory that finds support in the evidence, regardless of whether the trial court articulated the
correct reason for the ruling. Id. at 794 (stating that if trial court's conclusion of law is
incorrect, but trial court rendered proper judgment, its erroneous legal conclusion does not
require reversal).

V.

Personal Jurisdiction


 A nonresident defendant's contacts with the forum are analyzed to determine if the
contacts are sufficient to establish either specific or general jurisdiction. Helicopteros
Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 413-15, 104 S.Ct. 1868, 80 L.Ed.2d 404
(1984); BMC Software, 83 S.W.3d at 795. Personal jurisdiction over nonresident defendants
is constitutional when two conditions are met: (1) the defendant has established minimum
contacts with the forum state, and (2) the exercise of jurisdiction comports with traditional
notions of fair play and substantial justice. Int'l Shoe Co. v. Washington, 326 U.S. 310, 316,
66 S.Ct. 154, 90 L.Ed. 95 (1945); BMC Software, 83 S.W.3d at 795. Because the Texas
long-arm statute extends as far as federal due process permits, the statutory requirements are
satisfied if the exercise of personal jurisdiction comports with federal due process limitations. 
Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 226
(Tex. 1991).

 In this case, the special appearance evidence consisted of: the affidavits of the
corporate representatives of each respective defendant; various contracts between the parties; 
statements from the crew members involved in the car accident; the deposition of Vincent
Li, Director of Chartering and Insurance for Valles; the deposition of James Mike Bourne,
former Kerr Norton employee who managed the office servicing Jefferson County ports; 
port call lists; a print-out of the internet website for the Valles Group; a gate list; invoices and
correspondence between Valles and Texas vendors; a police report; and the affidavit of P.
J. Bhagat, a licensed attorney in India. Because the Farwahs submitted additional evidence
in a motion to reconsider after the special appearance hearing, we also consider the deadlines
established by the Texas Rules of Civil Procedure for submitting evidence in special
appearance hearings. See Tex. R. Civ. P. 120a(3).

 A. General Jurisdiction Analysis

 The Farwahs contend that the SEATRANSPORT's calls to various ports in Texas
constitute sufficient contacts to permit a Texas court to exercise general jurisdiction over any
dispute involving any of the respective dismissed defendants. The Farwahs further contend
that the activity in Texas of another vessel managed by Valles and Prudential and manned
by OCS, the SEABORNE, supports the contention that the court's jurisdiction should extend
to each dismissed defendant. Moreover, the Farwahs assert that Valles's purchase of
supplies for the SEATRANSPORT and the SEABORNE, while docked at Texas ports, as well
as the use of Kerr Norton's services in connection with those port calls, supports a Texas
court's exercise of general jurisdiction over Prosperous, OCS, Valles, and Prudential. In
contrast, the dismissed defendants each contend that the SEATRANSPORT's and the
SEABORNE's ports of call are not made at their direction and assert that the charterer
controls the business of the vessels. Additionally, the dismissed defendants assert that
Valles's arrangement of services and purchase of supplies for the vessels are not sufficient
contacts to support a Texas court's exercise of general jurisdiction over them.

 General jurisdiction is established over a nonresident defendant when the
nonresident's contacts in a forum are sufficiently continuous and systematic such that the
forum may exercise personal jurisdiction over the nonresident even when the cause of action
does not arise from or relate to its activities within the forum. BMC Software, 83 S.W.3d
at 796; Guardian Royal, 815 S.W.2d at 228. "When general jurisdiction is asserted, the
minimum contacts analysis is more demanding and requires a showing of substantial
activities in the forum state." Guardian Royal, 815 S.W.2d at 228. In conducting a general-jurisdiction analysis, we are concerned with the quality and nature of the contacts rather than
their number. Am. Type Culture Collection, Inc. v. Coleman, 83 S.W.3d 801, 809-10 (Tex.
2002). We do not view each contact in isolation; rather, we must carefully investigate,
compile, sort, and analyze all contacts to determine if together they are sufficient to support
general jurisdiction. Id. at 809. However, "mere purchases, even if occurring at regular
intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a
nonresident corporation in a cause of action not related to those purchase transactions." 
Helicopteros, 466 U.S. at 417-18 (footnote omitted). 

 It is undisputed that each dismissed defendant is organized under foreign law, has its
principal place of business outside the United States of America, and does not maintain an
office in Texas. None of the dismissed defendants has had employees, officers, or directors
who were Texas residents. None has owned, rented, or leased real property within Texas. 
None has maintained business records in Texas or conducted any banking business in Texas. 
None has recruited any Texas resident, directly or indirectly in Texas, for employment
purposes. None has authorized agents to accept service of process in Texas. 

 1. Ports of Call Analysis

 The SEATRANSPORT and the SEABORNE are both vessels chartered to Standard
Tankers. In accordance with the charter agreement between Prosperous and Standard
Tankers, neither the owner nor its managers control the destination or cargo of the
SEATRANSPORT. Under the written agreement, the charterer or its agents direct the vessel's
itinerary and cargo. With respect to Standard Tankers' control over the SEABORNE, its
charter contains identical terms regarding Standard Tankers' right to control the vessel's
destination.

 Generally, with respect to vessel owners and managers who do not direct the itinerary
of the vessel, port calls are not construed as substantial contacts of a quality sufficient to
establish a court's general jurisdiction over a nonresident defendant. See Asarco, Inc. v.
Glenara, Ltd., 912 F.2d 784, 786-87 (5th Cir. 1990) (finding no jurisdiction and discounting
quality of contacts regarding twenty port calls of vessels to Louisiana because company that
managed vessels did not choose where vessels would make port); Nicolaisen v. Toei Shipping
Co., Ltd., 722 F. Supp. 1162, 1165 (D.N.J. 1989) (finding that seventeen port calls to New
Jersey over a three-to-four year period and shipowner's dealing with time charterer in New
Jersey did not establish general jurisdiction); Conner v. Bouchard Transp. Co., 1994 A.M.C.
258, 1993 U.S. Dist. LEXIS 13786, at * 7-8 (E.D. Pa. 1993) (finding no general jurisdiction
despite over 100 port calls to Port of Philadelphia by defendant-owner's vessels, because
chartering agreement prompted all calls by which charterer determined destination of
defendant's vessel); Am. Overseas Marine Corp. v. Patterson, 632 So.2d 1124, 1126-130
(Fla. App. 1994) (finding no jurisdiction and discounting quality of contacts relating to port
calls in Florida because they were not made on the orders of defendants but instead were
made at the direction of the United States military under contracts with the United States). 
 In contrast, the Farwahs suggest that we follow the holding in Walter v. Sealift, Inc.,
35 F. Supp. 2d 532, 534 (S.D. Tex. 1999), in which the district court concluded that it could
exercise jurisdiction over the vessel's owner and manager when the vessel was under a time-charter. In Walter, the district court judge specifically noted that the defendants remained
in operational control of the vessel and generally knew the "precise itinerary of the voyages"
undertaken by the vessel. Id. The Walter court noted, "[O]wners of time- or voyage-chartered vessels typically retain significant control, a factor that tends to support a finding
of personal jurisdiction." Id. (emphasis added). 

 In contrast, the charter agreement between Prosperous and Standard Tankers provides
that the charterer shall direct the vessel's ports of call. Affidavits provided by each dismissed
defendant and the deposition of Vincent Li, Valles's Director of Chartering and Insurance,
support the dismissed defendants' contention that none of them directed the ports of call of
the SEATRANSPORT or the SEABORNE. The local husbanding agent's manager explained
that Standard Tankers, as charterer, directed the vessels' ports of call, and although the
vessels ported in Texas repeatedly, all of the vessels' itineraries were subject to change at any
time, as the charterer so directed. 

 Unlike the facts before the court in Walter, we find no evidence in this record
suggesting that the dismissed defendants had control over the port calls of the
SEATRANSPORT or the SEABORNE. In addition, because the trial court in the case before
us granted the special appearances, we imply all facts necessary to support the trial court's
judgment. See BMC Software, 83 S.W.3d at 795. Here, we imply that the trial court found 
the dismissed defendants did not control or have the right to control the vessels' ports of call. 
Thus, despite the evidence showing that the SEATRANSPORT called upon Texas ports more
than any other jurisdiction, we conclude that the SEATRANSPORT's and the SEABORNE's
calls to Texas ports are insufficient to establish general jurisdiction over the dismissed
defendants because the dismissed defendants lacked control over the decisions that led to the
vessels calling on Texas ports.

 2. Purchase of Supplies and Use of Services in Texas

 The Farwahs further contend that the dismissed defendants regularly contracted with
Texas residents to provide repairs and supplies, and that these contracts and their frequency
constitute sufficient minimum contacts to establish the court's jurisdiction. To support this
contention, the Farwahs attached to their motion for rehearing copies of invoices and
correspondence between Valles and World Ship Supply (Texas), Inc. ("World Ship Supply")
and between Valles and Unitor Shipping Service, Inc. (Houston) ("Unitor"). The documents
showed numerous purchases for the vessels. Additionally, the Farwahs claim that Valles
frequently contracted with Kerr Norton, the local husbanding agent, to assist Valles in
arranging for the vessels' necessary repairs, supplies, and support for crew changes. The
Farwahs filed a list of port calls for vessels managed by Valles in which Kerr Norton served
as the local husbanding agent. Moreover, the Farwahs refer to the deposition of James Mike
Bourne, Kerr Norton's manager, regarding the dismissed defendants' use of Kerr Norton's
services. 

 We note the difference between the special appearance evidence at the April 21, 2006,
hearing on Prosperous's and OCS's special appearances, and at the July 10, 2006, hearing
on Valles's and Prudential's special appearances. After the April 21 hearing and the trial
court's decision to grant the Prosperous and OCS special appearances, the Farwahs filed a
motion for reconsideration and attached additional evidence consisting of the invoices. 
Generally, the rules of procedure contemplate that the special appearance evidence is to be
filed on or before the date of the special appearance hearing. See Tex. R. Civ. P. 120a(3). 
Any affidavits must be served seven days prior to the hearing. Id. Nothing in the record
reflects that the Farwahs requested an order to continue the April 21 special appearance
hearing, and nothing in the record indicates that the trial court considered the evidence the
Farwahs attached to their motion for rehearing when it denied their motion. Absent evidence
that the trial court considered the evidence attached to the motion for rehearing, we assume
the trial court did not consider evidence filed outside the deadlines established by Rule 120a. 
 In contrast, these invoices were properly before the trial court when it heard Valles's
and Prudential's special appearances. Therefore, regrading the Valles and Prudential
hearings, we assume the trial judge considered the invoices even though it reached a similar
conclusion and ruled that it could not exercise jurisdiction. 

 a. Valles

 The special appearance evidence regarding Valles included port call lists, James Mike
Bourne's deposition, Vincent Li's deposition, and several volumes of invoices and
correspondence between Valles and World Ship Supply, and Valles and Unitor. The
invoices, which reflect purchases from November 2003 through December 2005, relate to
purchases for both the SEATRANSPORT and the SEABORNE that occurred prior to and after
the filing of the Farwahs' suit. The last port calls included in the port call lists occurred in
June 2005.

 Because the special appearance evidence included purchases made after the Farwahs
filed suit, we first address the invoices that we presume the trial court excluded in
determining whether the trial court had jurisdiction over the Farwahs' claims. In Double
Eagle Resorts, Inc. v. Mott, No. 09-06-387 CV, 2007 Tex. App. LEXIS 1099, at *14 (Tex.
App.-Beaumont, Feb. 15, 2007, no pet. h.), we held that in a general-jurisdiction inquiry the
relevant contacts to consider are those existing at the point the plaintiffs requested citation
be issued on their suit. Although the trial court's file would reflect when the Farwahs first
added Valles to their suit, when it issued citation, and when Valles first appeared, we are
unable to determine from the record before us the date citation was issued or the date that
Valles was first served. However, based on the allegations in the Farwahs' Seventh
Amended Petition, which is before us, it appears that by July 14, 2005, the Farwahs had
added Valles as a defendant in their suit. Therefore, for purposes of this appeal, we presume
the trial court considered the invoices dated prior to July 2005 in evaluating whether it could
exercise general jurisdiction over Valles. Id. 

 The record reflects that on the occasions the SEATRANSPORT and the SEABORNE
were in a Texas port, the amount of business conducted between Valles and Texas residents
varied on a day-to-day basis. During the period between November 2003 and June 2005, the
invoices reflect that Valles contracted with Texas vendors on approximately forty to fifty
days. The record further reflects that between April 2003 and June 2005, the
SEATRANSPORT and the SEABORNE docked at a Texas port approximately seventy-eight
times for an approximate total of 236 days. 

 Although the special appearance evidence is vague, it supports the proposition that
Valles conducted business with Texas residents somewhere between 100 and 265 days in the
twenty-seven month period prior to July 2005. Even if the evidence supported a finding that
Valles conducted business on as many as 265 days during that twenty-seven month period,
the nature of the contacts, consisting of the purchase of necessary services and supplies for
the vessel, is not sufficiently continuous and not of a sufficient quality to satisfy the
requirements of the Constitution. Despite the frequency, mere purchases, or their equivalent,
are insufficient to satisfy the jurisdictional analysis over a nonresident defendant when the
purchases do not relate to the causes of action. See Helicopteros, 466 U.S. at 418. It is not
the mere quantity of a nonresident's contacts that demonstrates a significant relationship with
Texas; rather, we are concerned with the quality of contacts. See Am. Type Culture
Collection, 83 S.W.3d at 809-10.

 With respect to the quality of contacts, we consider among other factors, whether the
choice to do business in Texas was Valles's or merely a coincidence because of another
entity's decision to direct the vessels to Texas. The record shows that the only reason Valles
purchased supplies in Texas and contracted with Kerr Norton is that Standard Tankers chose
Texas ports of call. We conclude that the nature of this arrangement diminishes the quality
of Valles's contacts and supports the trial court's ruling that Valles did not purposefully
direct its business activity to Texas. See Am. Type Culture Collection, 83 S.W.3d at 809
(discounting quality of contact regarding defendant's attendance at five conferences in Texas
when defendant did not select conference locations); Reyes v. Marine Drilling Cos., 944
S.W.2d 401, 402-04 (Tex. App.-Houston [14th Dist.] 1997, no writ) (discounting quality of
contact when defendant sent representatives to Texas at least 204 times to perform quality-assurance inspections that were necessitated under contractual obligations between defendant
and United States government). 

 We also consider the dollar value of Valles's contacts. From the record before us, it
appears that Valles's purchases from the various Texas vendors amounted to approximately
$500,000. But it is also apparent that Valles manages other ships. Because the record does
not contain evidence of the percentage of Valles's purchases from Texas residents, we are
unable to conclude that the nature and quality of this evidence established a significant or
substantial contact with Texas. Therefore, based on the record before it, the trial court did
not err in concluding that the quality and nature of Valles's contacts with Texas did not
support the court's exercising general jurisdiction over Valles.

 After carefully analyzing the record, including the quality and nature of the contacts,
we find no error in the trial court's ruling that Valles's contacts with Texas were insufficient
to support its exercise of jurisdiction. See Am. Type Culture Collection, 83 S.W.3d at 810. 
Therefore, the trial court did not err in granting Valles's special appearance.

 b. Prudential

 The evidence regarding Prudential's special appearance consists of the same
documents before the trial court with respect to Valles. However, the invoices and
correspondence in evidence were between (1) Valles and World Ship Supply and (2) Valles
and Unitor. Prudential is not listed as a party to the transactions. Despite the absence of
direct evidence of Prudential's business transactions in Texas, the Farwahs contend that we
should attribute Valles's Texas contacts to Prudential because all of the dismissed
defendants, including Prudential and Valles, operate as one entity or as a single business
enterprise. The dismissed defendants in contrast maintain that they are separate entities.

 Previously, this court discussed the Texas Supreme Court's application of the alter ego
doctrine in the context of long-arm jurisdiction. See Carlson Mfg., Inc. v. Smith, 179 S.W.3d
688 (Tex. App.-Beaumont 2005, no pet.). In that case, we stated that "'[t]o 'fuse' the parent
company and its subsidiary for jurisdictional purposes, the plaintiffs must prove the parent
controls the internal business operations and affairs of the subsidiary.'" Id. at 693 (quoting
BMC Software, 83 S.W.3d at 799). However, this control must exceed that normally
associated with common ownership and directorship. Id. We also noted that two separate
corporations are presumed by Texas law to be distinct entities and that courts will not
disregard their separate legal identities absent evidence demonstrating that the two entities
ceased to be separate so that the corporate fiction should be disregarded to prevent fraud or
injustice. Id. (citing BMC Software, 83 S.W.3d at 798-99). 

 Prudential is a Bermuda entity with its principal place of business in Hamilton,
Bermuda. Valles is a foreign corporation with its principal place of business in Vancouver,
Canada. The affidavit attached to Prudential's special appearance states that Prudential "is
not and has never been owned by Valles." Additionally, Vincent Li testified regarding the
dismissed defendants' affiliations with each other, and his testimony establishes that
Prudential and Valles are both part of the "Valles Group," a non-party to this suit. Therefore,
the record does not demonstrate that Prudential is a subsidiary of Valles Steamship Canada,
Ltd., the party before us. Moreover, the Farwahs presented no evidence that Valles
Steamship Canada, Ltd. controlled Prudential's operations or that Prudential failed to observe
corporate formalities. While Valles and Prudential conducted business that mutually
benefitted the vessels they serviced, their interaction does not provide a basis for disregarding
the separate nature of each corporation. See Carlson Mfg., 179 S.W.3d at 694. Based on the
evidence before it, the trial court correctly concluded that it could not attribute Valles's
contacts to Prudential, and that Prudential's contacts were not sufficient to conclude that it
had purposefully availed itself of the protection of Texas law by doing business in Texas. 
 c. Prosperous

 The evidence applicable to Prosperous's special appearance consists of the same
evidence we have discussed as relevant to Valles, with the exception of the numerous
invoices between (1) World Ship Supply and Valles, and (2) Unitor and Valles. As explained
above, the numerous invoices were filed after the special appearance hearing and there is no
indication that the Farwahs obtained leave to file the evidence subsequent to the hearing of
April 21, 2006. See Tex. R. Civ. P. 120a(3). 

 The Farwahs' alter ego claim regarding Prosperous is similar to their claim against
Prudential. However, regardless of whether the Farwahs' evidence is sufficient to show that
Valles and Prosperous are alter egos, if the contacts for Valles are insufficient for general
jurisdiction, the contacts for Prosperous are also insufficient because the special appearance
evidence applicable to Prosperous demonstrates even less business activity than that shown
for Valles. See Helicopteros, 466 U.S. at 418. In addition, the Farwahs fail to show that
Valles and Prosperous are alter egos. Therefore, the trial court did not err when it granted
Prosperous's special appearance.

 d. OCS

 The trial court considered the same evidence for OCS as it considered for
Prosperous's special appearance. We likewise conclude that the record of OCS's contacts
does not supply sufficient evidence to establish that a Texas court could exercise general
jurisdiction over it. Therefore, the trial court did not err when concluding that it could not
exercise jurisdiction over OCS.

 3. Consent-to-Sue Provision

 Last, the Farwahs claim that the dismissed defendants waived their due process rights
and agreed to legal action in Texas because of a provision in fine print at the bottom of
World Ship Supply's invoices. By its terms, the invoice's provision applies to foreign
government vessels. There is no evidence that the SEATRANSPORT or the SEABORNE are
government vessels. Moreover, the Farwahs present no evidence that they were "intended
third-parties" to these purchases. In re Palm Harbor Homes, Inc., 195 S.W.3d 672, 677
(Tex. 2006) (holding that a third-party may enforce contract terms when it was not a party
if contracting parties intended the contract to benefit the third-party and the contract was
entered into for the third-party's benefit). Because the terms do not appear to apply to the
Farwahs, and because there is no evidence that the term was intended for their benefit, we
conclude that the consent-to-sue provision is not relevant to the question of whether a Texas
court could exercise jurisdiction over the Farwahs' claims.

 B. Specific Jurisdiction Analysis

 The Farwahs' petition generally asserts claims for negligence based on the dismissed
defendants' breach of their alleged non-delegable duty to provide Ravinderpal a safe
workplace, safe ingress and egress, and safe transportation, all while in the course and scope
of his employment. "[W]hen a State exercises personal jurisdiction over a defendant in a suit
arising out of or related to the defendant's contacts with the forum, the State is exercising
'specific jurisdiction' over the defendant." Helicopteros, 466 U.S. at 414 n.8; BMC
Software, 83 S.W.3d at 796. "[T]he touchstone of jurisdictional due process analysis has
been 'purposeful availment.'" Michiana Easy Livin' Country, Inc. v. Holten, 168 S.W.3d
777, 784 (Tex. 2005). Purposeful availment requires a defendant to seek some benefit,
advantage, or profit by "availing" itself of the jurisdiction. Id. at 785. 

 In addition to this requirement, the litigation must also "result from alleged injuries
that 'arise out of or relate' to those activities" to satisfy the court's proper exercise of
jurisdiction. Guardian Royal, 815 S.W.2d at 228 (citing Burger King Corp. v. Rudzewicz,
471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)); Zac Smith & Co. v. Otis
Elevator Co., 734 S.W.2d 662, 663 (Tex. 1987). Recently, the Texas Supreme Court
addressed the "relate to" requirement, and the Court reiterated that to establish specific
jurisdiction, "there must be a substantial connection" between the nonresident defendant's
contacts and the "operative facts of the litigation." Moki Mac River Expeditions v. Drugg,
50 Tex. Sup. Ct. J. 498, 2007 Tex. LEXIS 188, at *39 (Tex. Mar. 2, 2007); Guardian Royal,
815 S.W.2d at 229-33.

 Under a theory of specific jurisdiction, when the trial court has declined to exercise
jurisdiction, we first examine the nature of the dismissed defendant's forum contacts to
determine whether the dismissed defendant purposefully availed itself of conducting business
here. See Michiana, 168 S.W.3d at 784-85. Although the Farwahs argue that we should use
the alter ego doctrine to evaluate the contacts of the collective dismissed defendants, we are
required to evaluate the evidence presented as to each of the dismissed defendants
individually.

 With respect to the nature of Prosperous's and OCS's forum contacts, the special
appearance evidence fails to establish that either of them was Valles's alter ego. Prosperous,
like Prudential, is part of the "Valles Group," a non-party. OCS, on the other hand, is not
affiliated with the "Valles Group." Prosperous is a foreign corporation with its principal
place of business in Liberia. OCS is a foreign corporation with its principal place of business
in Mumbai/Bombay, India. The evidence in the record of the interaction between Valles,
Prosperous, and OCS does not provide a sufficient basis for disregarding the separate nature
of each corporation. See Carlson Mfg., 179 S.W.3d at 694. Therefore, Valles's contacts may
not be attributed to Prosperous, OCS, or Prudential to determine whether sufficient minimum
contacts existed for purposes of satisfying the first prong of our specific jurisdiction
analysis. (1) See Moki Mac, 2007 Tex. LEXIS 188, at *12; Michiana, 168 S.W.3d at 784-85;
Am. Type Culture Collection, 83 S.W.3d at 806. 

 Examining the individual activity shown for Prosperous, OCS, and Prudential, the
special appearance evidence fails to show that any of them purposefully availed themselves
individually of the protection of Texas law by directing their business to Texas. As a result,
the trial court correctly concluded that it could not exercise jurisdiction over them.

 With respect to Valles, the invoices in the record demonstrate that Valles contracted
with various Texas vendors while the SEATRANSPORT and the SEABORNE were docked
at Texas ports in order to supply the needs of these vessels. Valles also contracted with Kerr
Norton to assist it in servicing these two vessels. As a result, we find the evidence is
sufficient to show that Valles frequently serviced these vessels while they were docked in
Texas and thereby, purposefully availed itself of the benefits and protections of Texas law. 
See Michiana, 168 S.W.3d at 784-85. Nonetheless, "purposeful availment alone will not
support an exercise of specific jurisdiction." Moki Mac, 2007 Tex. LEXIS 188, at *22. To
meet the requirements of the Constitution, "there must be a substantial connection between
those contacts and the operative facts of the litigation." Id. at *39.

 Thus, with respect to Valles, we must also address whether the operative facts of the
Farwahs' claims are substantially connected to Valles's activity in Texas. Id. The claim that
the injuries would not have occurred "but for" Valles's presence in Texas is insufficient. Id.
at *28. In this case, the operative facts are that (1) Ravinderpal was employed as a member
of the SEATRANSPORT on the day of the accident; (2) the car accident, which resulted in
Ravinderpal's death, occurred in Port Arthur, Texas, on property not alleged to be or shown
to have been owned or controlled by Valles; and (3) Seagler, the person who agreed to
provide transportation, and Esparza, the driver of the vehicle occupied by Ravinderpal, were
not employees subject to the control of Valles at the time of the accident. 

 Regarding the Farwahs' negligence claims, we note that a Texas employer's duty to
provide a safe workplace generally arises from the employer's control over the safety and
security of its premises. Exxon Corp. v. Tidwell, 867 S.W.2d 19, 23 (Tex. 1993). It appears
that Esparza was not controlled by Valles and we have already stated that the accident did
not happen on the vessel. Thus, with respect to the evidence of control, there is no evidence
in the record demonstrating that Valles had a general duty to control the activity on premises
that it neither owned nor controlled. 

 Nevertheless, a defendant in some circumstances may become liable for the
negligence of independent contractors that it hires. In cases extending liability to defendants
who hire independent contractors, the defendant's duty emanates from the control the
defendant retains over the details of the work from which the injury arises. See
Hoechst-Celanese Corp. v. Mendez, 967 S.W.2d 354, 358 (Tex. 1998) (premises owner that
issued safety guidelines and made inspections of independent contractor's work owed limited
duty that its precautions not unreasonably increase the probability and severity of injury); 
Clayton W. Williams, Jr., Inc. v. Olivo, 952 S.W.2d 523, 528 (Tex. 1997) (general contractor
liable for injuries of an independent contractor's employee only if the general contractor
exercised supervisory control over the injury-causing activity). In reviewing the special
appearance evidence, we find no contract between Valles and Esparza that demonstrates that
Valles had a right to control Esparza's driving activities prior to the accident. Further, there
is no allegation that Valles caused the accident by virtue of its control over Esparza's driving. 
 The Farwahs also allege that Valles failed to provide safe transportation and ingress
and egress. With respect to these claims, Texas law recognizes that an employer who hires
an independent contractor to transport its employees can become liable for negligent hiring
if the employer knew or should have known that its contractor was incompetent and a third
person was injured because of the contractor's incompetency. Mireles v. Ashley, 201 S.W.3d
779, 782 (Tex. App.-Amarillo 2006, no pet.); Wasson v. Stracener, 786 S.W.2d 414, 422
(Tex. App.-Texarkana 1990, writ denied). An independent contractor driver's incompetency
is typically proven by showing that the driver is unlicensed or reckless. See Mireles, 201
S.W.3d at 783-84; see generally Schneider v. Esperanza Transmission Co., 744 S.W.2d 595,
596 (Tex. 1987) (elements of negligent entrustment of an automobile include the entrustment
of a vehicle to an unlicensed, incompetent, or reckless driver). In this case, there was no
proof or allegation that Esparza was unlicensed or incompetent, or that Esparza's negligence
caused the collision. Thus, the special appearance evidence does not show that Valles
negligently hired Seagler or Esparza. 

 In summary, the special appearance evidence does not demonstrate that Valles owned
or controlled the premises where the collision occurred, that Valles controlled or exercised
a right to control Esparza, or that Esparza was an unlicensed or incompetent driver. These
are the operative facts of this litigation. Thus, the Farwahs' evidence fails to show that
Valles's activities in the forum -- servicing the vessels it managed -- were substantially
connected to the operative facts of the litigation. See Moki Mac, 2007 Tex. LEXIS 188, at
*39; compare EMI Music Mexico, S.A. de C.V. v. Rodriguez, 97 S.W.3d 847, 856-58 (Tex.
App.-Corpus Christi 2003, no pet.) (Plaintiffs' pleadings and the special appearance
evidence provided sufficient jurisdictional allegations with respect to the plaintiffs' claims
arising out of an accident that resulted from defendant's alleged negligence in hiring the
driver.). As a result, the trial court did not err in dismissing Valles. See Int'l Shoe, 326 U.S.
at 317.

V.

Conclusion


 We find no error in the trial court's rulings granting the special appearances of
Prosperous, OCS, Prudential, and Valles. The record does not show that any of the dismissed
defendants established continuous and systematic contacts with Texas of such quality and
nature that a Texas court could subject them to defending a suit in Texas based upon a theory
of either general or specific jurisdiction. The Farwahs' claims do not arise from or relate to
Valles's purposeful contacts with Texas; and we find that Prosperous, OCS, and Prudential
did not have purposeful contacts with Texas. Because the dismissed defendants negated all
bases of jurisdiction, we affirm the judgment of the trial court dismissing them from this
case.

 AFFIRMED.

 ____________________________

 HOLLIS HORTON

 Justice


Submitted on September 5, 2006

Opinion Delivered April 5, 2007

Before McKeithen, C.J., Kreger and Horton, JJ.
1. In their brief on appeal, the Farwahs rely principally on a single business enterprise
theory in their argument that Valles's contacts should be attributed to the other dismissed
defendants. Although they do not appear to rely on an agency theory, agency principles
generally allow a court to allocate an agent's contacts to its principal. See Schott Glas v.
Adame, 178 S.W.3d 307, 315 (Tex. App.-Houston [14th Dist.] 2005, pet. denied). However,
an agency relationship cannot be presumed and the burden of proof is on the party asserting
the existence of the relationship. See id. Although Valles contracted with Prudential, the
contract expressly provided that Valles was not Prudential's agent. Therefore, with respect
to Valles's business with Texas vendors, it was within the trial court's discretion to decline
to allocate Valles's business contacts to Prudential or to Prudential's principal, Prosperous. 
Regarding OCS, there is no evidence that it entered into any business transactions in Texas
and, as a result, there are no Texas contacts to attribute to the other dismissed defendants.
While proving that Valles acted as an agent would allow Valles's contacts to be attributed
to Prudential or Prosperous, our conclusion that the trial court properly declined to exercise
jurisdiction would not change because the accident is not substantially related to Valles's
contacts.